Briggs *v.* New York Central Rail Road Company.

———————•••———————

J. T. & C. W. BRIGGS *vs.* THE NEW YORK CENTRAL RAIL
ROAD COMPANY.

A mere delay, in the delivery of goods, by a common carrier, is not a conversion of the property ; nor will it entitle the owner to recover the value thereof.

Where the defendant undertook to transport a quantity of garden seeds from Rochester to Rome, and there deliver the same to the Rome and Watertown Rail Road Company, to be conveyed to Sacket's Harbor, upon which delivery to the latter company the liability of the defendant should cease, and there was a delay of twelve days in so delivering the goods, but the same were delivered to that company before the commencement of the action ; *it was held* that the delivery to the Rome and Watertown Rail Road Company was equivalent to a delivery to the plaintiffs, and that such delivery having been made before suit brought, no right of action existed, except for the unreasonable delay of the defendant in the transportation and delivery of the goods.

*Held also,* that in an action by the owners of the goods, against the carrier, the plaintiffs were not entitled to recover the value of the goods, but only for such trouble and expense as resulted directly and necessarily from the

negligence and delay of the defendant in performing its undertaking. WELLES, J., dissented.

*Held further*, that the plaintiffs could not recover for the time and expenses of an agent and team, while waiting for the goods at Sacket's Harbor; without showing that the defendants had notice, at the time of contracting for the transportation of the goods, that an agent of the owners would be waiting at Sacket's Harbor, to receive them.

CROSS-APPEALS from a judgment entered at the circuit, upon a verdict. The action was commenced on the 20th day of December, 1853, and was brought to recover against the defendants, as common carriers, between Rochester and Rome, the value of 72 boxes of seeds shipped at Rochester for Sacket's Harbor, and to be delivered to the Rome and Watertown Rail Road Company at Rome; the defendants not to be responsible after the seeds should be delivered to the Rome and Watertown Rail Road Company. The cause was tried before SMITH, justice, at the Monroe circuit, in April, 1856.

It was admitted on the trial that the defendants, during the times hereinafter mentioned, were and still are a corporation and common carriers of property and freight by rail road cars propelled by steam, from the city of Rochester to Rome in the county of Oneida, in this state, and elsewhere, and that the plaintiffs, on the first day of December, 1853, were and ever since have been co-partners in the business of wholesale and retail dealers in garden and field seeds; and that their principal place of business was at Rochester. It was also admitted that on the 5th day of December, 1853, the plaintiffs delivered to the defendants, at their freight warehouse in the city of Rochester, 64 boxes of garden seeds and eight boxes of garden and field seeds, the property of the plaintiffs, marked "Samuel Phillips, Sacket's Harbor, N. Y." and that the defendants executed and delivered to the plaintiffs a receipt for the goods, in which the defendants agreed, for a reward paid to them by the plaintiffs, to forward the same according to their said mark, but not to be responsible after said goods should be delivered at Rome as aforesaid. It was also admitted that this action was commenced on the 20th day of December, 1858.

It was then proved on the part of the plaintiffs, that on the 4th day of December, 1853, and from that time until the 20th of the same month, Samuel Phillips, who was their agent, engaged in the sale and distribution of garden seeds, was at Sacket's Harbor, waiting the arrival there of the 72 boxes of seeds above mentioned, for the purpose of distributing them about the country. That said seeds not having arrived on the 15th of December, he communicated with the plaintiffs at Rochester, by telegraph, on the subject, who, in consequence of the non-arrival of the first lot of seeds as directed, on the 16th of December delivered to the defendants at Rochester aforesaid a second lot of 71 boxes, similar to and directed as the first lot, and which reached Sacket's Harbor on the 19th of December, and were taken the next morning (20th December) by Phillips, who left Sacket's Harbor with them on that day, prior to the arrival there of the first lot. It was also proved that said Phillips, during all the time of his stay at Sacket's Harbor as aforesaid, had with him a span of horses and wagon belonging to the plaintiffs, used in the distribution of seeds, and that his wages and board, together with the cost of keeping the team and the value of its use, amounted in all to five dollars a day.

The evidence with regard to the value of the time of said Phillips and the team, and their expenses while at Sacket's Harbor, was objected to by the defendants' counsel before it was given, on the ground that those were not proper items of damage in this case, unless it were shown that the defendants were informed, when they received the goods, that there was, or was to be a person in waiting at Sacket's Harbor to receive them. The court overruled the objection, and the defendants' counsel excepted to such ruling. The 72 boxes of seeds were proved to be worth not less than $300.

It was also proved that the seeds were in the warehouse of the defendants at Rochester at the time of the trial.

It was proved on the part of the defendants, that the 72 boxes of seeds reached Rome in a freight train going east from

Rochester to Albany, in the night of the 6th day of December, 1853. That on their arrival at Rome it was raining very hard, and there being another freight train standing on the track between the running train and the freight warehouse, the boxes in question were transferred to such standing train, for the purpose of having them removed in the morning to the freight warehouse. In the morning their removal was neglected, and they were taken to Albany, from which place they were returned to Rome and arrived there on the 19th of December, 1853, and were on the same day shipped on board the freight train of the Rome and Watertown rail road, which train started for Watertown with said goods on the morning of the 20th December, and on the same day they were delivered at the rail road freight house in Sacket's Harbor. That the Rome and Watertown rail road connected at Watertown with another rail road extending from that place to Sacket's Harbor. It was also proved that the freight agent of the defendants at Rome received the freight bill sent from Rochester by the train which carried the seeds, on the morning of the 6th of December. That not finding the seeds in the warehouse, he laid the bill aside, and neglected to make any further inquiries for the seeds; that on the 10th or 12th of December, he sent an agent to Albany to look after lost freight; and that the agent found the seeds in question in the defendants' warehouse at Albany. The seeds were afterwards ordered back to Rome, where they arrived as before stated. It was also proved that the defendants' freight trains are usually about ten hours in going from Albany to Rome, and about eight hours in going from Rochester to Rome. Before the arrival of the goods at Sacket's Harbor, the said Phillips had left that place and did not return there.

On these facts the plaintiffs claimed to recover the value of the goods, the damages which they had sustained by the loss of time and expenses of Phillips and the team, and interest on the value of the goods during the delay.

The plaintiffs' counsel requested the court to charge the

jury, that if they should find that the seeds in question were, by the gross negligence and carelessness of the defendants' agents, carried past Rome to Albany, and were detained as above mentioned, it was such a breach of duty on the part of the defendants as common carriers, as to render them liable for the whole value of the seeds. The court refused so to charge the jury, and the plaintiffs' counsel excepted.

The defendants' counsel requested the court to charge the jury, that the plaintiffs were not entitled to recover the value of the goods. The court did so instruct them, and the plaintiffs' counsel excepted. The defendants' counsel also requested the court to charge the jury, that the plaintiffs could not recover damages (if they had sustained any) by the unnecessary delay which had occurred in delivering the goods at Rome by the defendants, because such delay was not made a ground of action in the complaint, and the goods were delivered to the Rome and Watertown rail road before the commencement of this action. The court refused so to charge the jury, and the defendants' counsel excepted. The defendants' counsel also requested the court to charge the jury, that the plaintiffs could not recover for the loss of time and expenses of Phillips and the horses, as it did not appear that the defendants were notified of those special circumstances when they received the goods. The court refused so to instruct the jury, and on the contrary instructed them that the plaintiffs were entitled to recover for such loss of time and expenses; to which refusal and instructions the defendants' counsel excepted. The plaintiffs' counsel further requested the judge to charge the jury, that the conduct of the defendants' agents, as shown by the evidence, and the unreasonable delay in the delivery of the seeds at Rome, entitled the plaintiffs to refuse to receive the seeds, and that the defendants were liable to the plaintiffs for the value thereof. The court refused so to charge, and the plaintiffs' counsel excepted. The defendants' counsel requested the court to order a nonsuit, for the reasons above suggested; which the court refused to do, and the defendants' counsel

excepted. The cause was then submitted to the jury, who found a verdict for the plaintiffs for $65. Judgment was entered for that sum, with costs; from which both parties appealed.

*S. Mathews,* for the plaintiffs.

*H. R. Selden.* for the defendants.

JOHNSON, J.   It appears from the case that the goods were delivered by the defendants to the Rome and Watertown Rail Road Company on the 19th of December, and this action was commenced on the following day.   The rights of the parties must, of course, be determined by the state of things existing at the time the action was commenced.   The plaintiffs then had a cause of action, but it was not for a destruction, or a conversion of the goods.   It was for negligence in not delivering, in a reasonable time, to the Rome and Watertown Rail Road Company.   The goods had then been delivered to that company by the defendants, and were on their way to the place of destination.   The goods were not lost or destroyed; they were merely delayed, negligently.   What then should be the measure of the recovery?   Clearly the loss or damage the plaintiffs have sustained, by reason of the delay, and nothing more.   This is not the value of the goods.   They were still in existence, and were the goods of the plaintiffs.   It is not shown that the goods had lost their value, or any value, by reason of the delay in transportation and delivery.   The plaintiffs had been put to trouble and expense, in furnishing other similar goods, in order to prosecute their business; and for such trouble and expense as resulted directly and necessarily from the negligence and delay of the defendants in performing their undertaking, they are responsible in damages.   Whether that shall be more or less than the value of the goods, depends upon the evidence.   But the value of the goods is not the measure of damages, because the plaintiffs, for aught we know, and as

we are bound to presume, until the contrary is shown, are still the owners of the goods. If the defendants have refused to deliver the goods since this action was commenced, and then been guilty of a conversion, that is a new and distinct cause of action, and has nothing to do with the measure of damages, here.

It seems to be settled law in this state, that a mere delay in delivery, by a carrier, is not a conversion of the property. So that the only claim for damages grows out of the delay.

A new trial should be granted, with costs to abide the event.

E. DARWIN SMITH, J. I concur in granting a new trial, on the question of damages, on the ground that the defendants had no notice, when they received the goods, that an agent would be in waiting to receive them at Sacket's Harbor; or that there was any special occasion or necessity for their prompt or immediate delivery. If any extra diligence was required or expected, of the defendants, in respect to the transmission or delivery of the seeds, they were entitled to notice of the special circumstances, before they could be liable for special damages. If the special circumstances had been communicated to, or been known by, the defendants, at the time of the receipt of the goods, then the damages resulting from a breach of the defendants' contract to deliver within a reasonable time might very properly be held to have been within the contemplation of the parties when the contract was made. (*Hawley* v. *Baxendate*, 9 *Exch. Rep.* 341.) But I cannot concur in the opinion that the delay in the delivery of these seeds amounted to a conversion of them, or entitled the plaintiffs to recover the value thereof.

The seeds were received the 5th and arrived at Rome in the night of the 6th of December, and if they had been delivered the next day, December 7, to the Rome and Watertown Rail Road Company, there could be no pretense of negligence in respect to their delivery. They were actually delivered to the Rome and Watertown Rail Road Company on the 19th of the

same month. This delay of twelve days was negligent, and entitled the plaintiffs to recover all the damages sustained thereby or by reason thereof, which were within the scope of damages naturally or reasonably consequent upon such delay— such as may reasonably be supposed within the contemplation of the parties—such as would ordinarily be incident to, or result from, such neglect, in the delivery of the property. But it did not amount to a conversion of the property; and, in my opinion, did not entitle the plaintiffs to recover the value of the goods. Mere delay in the delivery of property, by a carrier, is not a conversion, nor equivalent to a conversion. (6 *Hill*, 588. *Angell on Carriers*, § 431. *Scovill* v. *Griffith*, 2 *Kernan*, 518.) The defendants are common carriers, on the line of their road, but no further. When they had delivered these boxes, at Rome, to the Sacket's Harbor and Watertown Rail Road Company, their duty as common carriers was fulfilled. Such delivery was, in my opinion, equivalent to a delivery to the plaintiffs, who were bound to receive their property. (2 *Kernan*, 511. 22 *Barb.* 292.)

The delivery was made at Rome on the 19th of December, and this suit was commenced on the 20th of the same month, and when the property was on the way from Rome to Sacket's Harbor, in the possession of the Rome and Watertown Rail Road Company. No right of action, in my opinion, then existed, in behalf of the plaintiffs, in respect to such goods, except for the unreasonable and negligent delay of the defendants in their transportation and delivery. The defendants' duty had been fully discharged, except in respect to this simple question of negligence. For that, and that only, could the plaintiffs, at that time, maintain any action. The fact that, at the trial, these goods were in the possession of the defendants, I think, entirely immaterial. How such a fact came to be inserted in the case I cannot conceive. No such question was presented in the pleadings, or was at issue on the trial or proper to be presented there, in any way, except to contradict the defendants' evidence in respect to the delivery at Rome, or

to satisfy the jury that the goods had never been sent forward from Rochester. This was not really pretended, and is in conflict with the conceded facts of the case.

WELLES, J. The property in question, consisting of 72 boxes of garden and field seeds, marked " Samuel Phillips, Sacket's Harbor, N. Y." was delivered by the plaintiffs to the defendants on the 5th day of December, 1853, at the freight warehouse of the latter in Rochester, and the defendants at the same time gave a receipt for it, in which they agreed to forward the same according to such mark, but not to be responsible after the goods should be delivered at Rome. The case shows that the defendants were common carriers from Rochester to Rome, and that there were rail road communications between Rome and Sacket's Harbor. By this agreement the defendants undertook, within a reasonable time, to carry the goods from Rochester to Rome, and there to ship them on board of a conveyance by which freight was usually conveyed from Rome to Sacket's Harbor. When they should do that, their obligation would be discharged.

The case further shows that on the evening of the 6th of December, the next day after the goods were received by the defendants, they reached Rome in a freight train going east from Rochester to Albany. At Rome the goods were transferred to another freight train of the defendants, standing on the track between the running train and the defendants' freight warehouse, for the purpose of having them removed in the morning to the warehouse. In the morning their removal was neglected, and they were taken to Albany, from which place they were returned to Rome on the 19th December, 1853, and were on the same day, at Rome, shipped on board the trains to Watertown. It also appears that on the 4th of December, 1853, and from that time to the 20th of the same month, Samuel Phillips, the plaintiffs' agent engaged in the sale and distribution of garden seeds, was at Sacket's Harbor, waiting the arrival there of the 72 boxes of seeds in question, for the

purpose of distributing them about the country. That the said seeds not having arrived at Sacket's Harbor on the 15th December, Phillips communicated with the plaintiffs at Rochester, by telegraph, on the subject, and that the plaintiffs, in consequence of the non-arrival of the first lot of seeds as directed, on the 16th December, delivered to the defendants, at Rochester, 71 boxes similar to and directed as the first lot, which reached Sacket's Harbor on the 19th December, and were taken by Phillips, the next morning, (20th December,) who departed from Sacket's Harbor with them on that day, prior to the arrival there of the first lot.

These facts show gross negligence on the part of the defendants. The plaintiffs were bound to have an agent at Sacket's Harbor to receive the goods, a reasonable time after they were shipped at Rochester. This, the case shows, was done. Phillips was there for that purpose, waiting their arrival, from the 4th to the 20th of December, and when the goods arrived, he had left with other similar goods which the plaintiffs had shipped to him in consequence of the non-arrival of the goods in question. It does not appear that the goods were ever delivered, or offered to be delivered, by the defendants, to the plaintiffs or any agent of theirs, at any place, after the defendants received them, on the 5th of December; but on the contrary, that at the time of the trial they were in the defendants' warehouse at Rochester. When they arrived at Sacket's Harbor, if they ever were sent there, the plaintiffs had no agent there to receive them, nor were they bound to have one. They had kept one there a reasonable time, treated the goods as lost, and withdrawn him : all this in consequence of the inexcusable delay of the defendants in the delivery of the property at Rome. As the facts stand proved, as shown by the case, the plaintiffs clearly had the right to abandon the property in question and look to the defendants for its value. If they had returned the property to the plaintiffs, or offered to return it before the action was commenced, in as good

condition as when received, they would not have been liable for its value. Their liability in that case would have been limited to the actual damages sustained by the plaintiffs by the negligence complained of. Probably the depreciation in their market value, together with such other actual damages as the plaintiffs may have sustained as the legal and direct consequences of the delay in the delivery, might have been recovered.

It is not necessary, in order to recover of a common carrier the value of goods delivered to him to be carried, that the facts should warrant an action such as would have been denominated an action of trover, before the names of actions were abolished; nor that the evidence should establish a conversion of the property by the carrier, to his own use. Suppose in this case the property had never been heard of at all after it was delivered to the defendants to be carried, &c. what, short of the value of the property, can be suggested as the measure of damages? The case as actually proved, is no better for the defendants than that supposed. The plaintiffs rightfully treated the property as lost, and brought their action. That it had all the time remained in the defendants' possession, not delivered or offered to be delivered, should not, in my opinion, go to diminish the plaintiffs' right of action, or their measure of damages. I desire to put this decision upon the particular circumstances of the case, and not upon the idea of a conversion by the defendants of the goods, which I do not think the evidence will warrant. The only question is the measure of the plaintiffs' damages; which, under the facts proved and admitted on the trial, can be nothing short, in my opinion, of the value of the goods. Under the proof in the case, I think the plaintiffs were not entitled to recover for the time and expenses of Phillips and the team, while waiting for the goods at Sacket's Harbor. To prepare the way for such an item of damages, the defendants should have notice, at the time of the contract to carry and forward the goods, that an

agent would be placed there with a team and wagon to receive the seeds.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

[MONROE GENERAL TERM, September 6, 1858. *Welles, Smith* and *Johnson,* Justices.]