WILLIAM E. WAMSLEY, Respondent, v. THE ATLAS STEAMSHIP COMPANY, LIMITED, Appellant.

CARRIERS — NOT LIABLE IN CONVERSION FOR MERE NON-FEASANCE.
A steamship company is not liable in an action of conversion for the value of a box of negatives and photographic prints delivered to it by a passenger on one of its steamships and placed in the storeroom by one of its servants, and which could not be found prior to the commencement of the action, where, although subsequently found on the vessel under circumstances raising a presumption that it had not been removed therefrom, there is no evidence showing the circumstances of its removal from the storeroom and it may have been stolen by a fellow passenger or have been removed and misplaced by some one for whose acts the defendant was not responsible in an action for conversion, although possibly liable for negligence, and the refusal of the court to charge that "in such case the carrier can only be made liable upon proof of actual conversion of the box of negatives" is reversible error.

*Wamsley* v. *Atlas Steamship Co.*, 50 App. Div. 199, reversed.

(Argued October 15, 1901; decided November 26, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered April 9, 1900, affirming a judgment in favor of plaintiff entered upon a verdict.

The defendant is the owner of a line of steamships plying between South America, the West Indies and New York. In April, 1895, one S. F. Massey took passage on defendant's steamship *Alene*, at Savanilla, a seaport of the United States of Colombia, South America. His destination was New York. After paying for a through passage Massey obtained permission to stop over at Port Limon, Costa Rica, where he remained about two weeks. He then took passage upon another of defendant's vessels named *The Alleghany* and arrived in New York on May 14th, 1895. Among the personal effects which he took on board the latter vessel was

a box of negatives and photographic prints which were placed in the storeroom of the vessel. Upon arriving in New York this box was looked for but could not be found. Thereafter Massey assigned to the plaintiff his interest in the negatives and prints and this action was commenced on November 12th, 1895, to recover the value thereof. The complaint is drawn in conversion and alleges that Massey delivered the said box to the defendant to be returned to him on demand, and "thereafter, at the city of New York, said Massey demanded from the defendant the return to him of said box of negatives and views; but this defendant has refused and neglected to deliver the same, and has wrongfully converted the same to his own use and benefit."

The answer, after denying the allegations of the complaint, admits the demand for the box and the refusal to deliver, and alleges as a separate defense that the defendant's liability to Massey for loss of his personal effects or injury thereto, was limited to $48.50 by an agreement set forth upon Massey's ticket of passage, and that said sum was tendered to Massey before the commencement of the action. Upon the trial it was proved that the defendant endeavored to find the box in question, and that it was not discovered until January, 1896, or about two months after the commencement of this action. It was then tendered to the plaintiff who refused to receive it. The box containing these negatives and views was one which had been previously used as a brandy box, and was conspicuously marked with the name of a well-known firm of manufacturers of brandy. Massey's name was written thereon in lead pencil. The box was found in the forepeak of the vessel among a lot of signal rockets. How it came there does not appear. There was conflicting evidence as to whether Massey ever had possession of his ticket of passage, or had notice of the agreement printed thereon limiting the defendant's liability. The action has been twice tried. Upon the first trial the complaint was dismissed. The judgment entered upon this dismissal was reversed by the Appellate Division. Upon the second trial the case was submitted to the jury and a verdict rendered in favor

of the plaintiff for $900. The judgment entered upon that verdict has been unanimously affirmed.

*Everett P. Wheeler* for appellant. Upon the undisputed explanation given by the defendant, as matter of law, there was no conversion of the box. (2 Greenl. on Ev. § 644; 26 Am. & Eng. Ency. of Law, 717; *Gillet* v. *Roberts,* 57 N. Y. 28; *Packard* v. *Getman,* 4 Wend. 613; *Hawkins* v. *Hoffman,* 6 Hill, 586; *Ross* v. *Johnson,* 5 Burr. 2825; *Richards* v. *P. A. Works,* 37 Hun, 1; *Parmenter* v. *A. B. M. Co.,* 44 App. Div. 47; 162 N. Y. 648; *Spooner* v. *Manchester,* 133 Mass. 270; *McEntee* v. *N. J. S. Co.,* 45 N. Y. 34; *P. E. Co.* v. *Shearer,* 160 Ill. 215.) If the mark that the box had was misleading, and in fact misled the defendant's officer into the supposition that the box contained signals instead of negatives, the defendant was not liable for the failure to find the box or for its non-delivery either to Massey or to the plaintiff. (*The Mississipi,* 76 Fed. Rep. 375; *E. Ry. Co.* v. *Wilcox,* 84 Ill. 239; *S. E. Co.* v. *Kaufman,* 12 Heisk. [Tenn.] 161.) The ticket issued by a steamship company to a passenger embodies the contract in reference to the transportation of the passenger and his goods, and it is immaterial whether or not he reads the ticket. (*Steers* v. *L., N. Y. & P. S. Co.,* 57 N. Y. 1; *Wheeler* v. *O. S. N. Co.,* 72 Hun, 5; 149 N. Y. 576; *Raubitschek* v. *Blank,* 80 N. Y. 478; *People* v. *St. Nicholas Bank,* 3 App. Div. 544; *Bayne* v. *Wiggins,* 139 U. S. 210; *Beckwith* v. *Talbot,* 95 U. S. 289; *Ridgway* v. *Wharton,* 6 H. L. Cas. 238; *Collins* v. *B. & E. R. Co.,* 11 Exch. 790; *Quimby* v. *B. & M. R. R.,* 150 Mass. 365; *Gibbon* v. *Paynton,* 4 Burr. 2298.) The damages recovered were excessive, and out of all proportion to the actual value of the box. (*Jones* v. *Morgan,* 90 N. Y. 4; *Wehle* v. *Haviland,* 69 N. Y. 448; 2 Sedgwick on Damages, §§ 183, 188, 495; *McColl* v. *W. U. Tel. Co.,* 12 J. & S. 487.)

*Alexander S. Bacon* for respondent. The conversion of personal property is abundantly established by proof that

defendant, as a·common carrier, received goods in good order at the place of designation, properly consigned to plaintiff, and refused to deliver them on demand. (*Clement* v. *N. Y. C. & H. R. R. R. Co.,* 30 N. Y. S. R. 713.) The rule of damages was correctly laid down by the trial court. (*Lovell* v. *Shea,* 18 N. Y. Supp. 193; 28 J. & S. 412; *Heald* v. *MacGowan,* 15 Daly, 233; 5 N. Y. Supp. 450.)

WERNER, J. The action was brought and tried upon the theory that the defendant was liable as for a conversion. The complaint is silent as to the relations which existed between the defendant and plaintiff's assignor at the time of the alleged conversion, but the answer asserts and the evidence establishes the relation of carrier and passenger. The question of defendant's liability as for a conversion must, therefore, be determined in the light of that relation. There are cases in which evidence of demand and refusal is sufficient to sustain a recovery in conversion, but this rule applies against common carriers only in exceptional cases. The general rule is that a common carrier is not liable in conversion for mere non-feasance, although he may be liable for negligence. So on the contrary he may be held in trover when he is guilty of misfeasance, although the wrong may have been unintentional. The principle is thus stated in *Hawkins* v. *Hoffman* (6 Hill, 588): " Trover will lie when goods have been lost to the owner by the act of the carrier, though there may have been no intentional wrong; as when goods are by mistake, or under a forged order, delivered to the wrong person. But it will not lie for the mere omission of the carrier; as where the property has been stolen or lost through his negligence, and so cannot be delivered to the owner. Mere non-feasance does not work a conversion of the property; and although the owner may have another action he cannot maintain trover." In that case a trunk was lost, and in referring to the fact the court continued: " A demand and refusal would not alter the case; for as the trunk was either stolen or lost the defendant could not deliver it. Demand and refusal are

only evidence of a conversion where the defendant was in such a condition that he might have delivered the property if he would." In *Packard* v. *Getman* (4 Wend. 615) the Supreme Court said: "Trover lies not against a carrier for negligence, as for losing a box, but it does for an actual wrong; nor for goods lost or stolen from a carrier or wharfinger; there must be an injurious conversion; something more than a bare omission. Where a carrier loses goods by accident trover does not lie; but where he is an actor and delivers them to a third person, though by mistake, the action lies. It also lies where the defendant refuses to deliver the goods according to contract, he having the possession. But if lost or stolen, so that he cannot deliver them, and his inability does not arise from any act of his own, trover does not lie, though case does." To the same effect is *Briggs* v. *N. Y. C. R. R. Co.* (28 Barb. 515) where it was held that "a mere delay in the delivery of goods, by a common carrier, is not a conversion thereof; nor will it entitle the owner to recover the value thereof." Following these cases and citing with approval the authorities upon which they are based, this court, in *Magnin* v. *Dinsmore* (70 N. Y. 417), thus stated the law of conversion as applied to common carriers. "A conversion implies a wrongful act, a misdelivery, a wrongful disposition or withholding of property. A mere non-delivery will not constitute a conversion, nor will a refusal to deliver, on demand, if the goods have been lost through negligence, or have been stolen." The case last cited was brought against the president of an express company to recover the value of certain watches delivered to that company by the plaintiff for transportation to a consignee in Memphis. The question was whether the plaintiff was limited to a recovery as for defendant's negligence by the conditions of the contract of carriage, or whether plaintiff could recover the full value of the goods in conversion. In referring to the decision of this court upon a former appeal in that case the court said: "This court held that the non-delivery of the goods with the other proofs in the case, was evidence of *negligence* to be submitted to the

jury, and that the *onus* was upon the defendants to show that they were lost without the negligence of the carriers or their servants. But an action for a conversion will not be sustained upon such evidence alone."

The facts in this case are practically undisputed. Although the complaint alleges a demand and refusal, and the answer admits the allegation so far as it relates to the demand made by the plaintiff, the evidence shows that the refusal was merely technical and not actual. The defendant, believing that the box of negatives had either been lost or stolen, simply expressed its inability to deliver the same. Although the box was subsequently found on board defendant's vessel *Alleghany*, under circumstances which raised the presumption that it had not been removed from the ship, there was no evidence showing the circumstances of its removal from the storeroom in which it had been originally deposited. It may have been stolen by a fellow passenger or have been removed and misplaced by some one for whose acts the defendant was not responsible in an action for conversion although liable for negligence.

This brings us to the defendant's request to charge which raises the serious question in the case. The court was asked to charge the jury, " in such case the defendant can only be made liable in this action upon proof of actual conversion of the box of negatives." The court declined to charge otherwise than it had already charged, and defendant's counsel excepted. Unless the court had the right to instruct the jury as a matter of law that the defendant was guilty of conversion, this request should have been charged if the instruction had not previously been given. A brief reference to the salient facts will suffice to show that the court would not have been authorized to hold as a matter of law that the defendant was guilty of conversion. The facts, although substantially undisputed, were such as to support conflicting inferences. The box of negatives was placed in the storeroom of the vessel by one of the defendant's servants. When the owner disembarked it could not be found. A camera belonging to him had been surreptitiously taken from his stateroom, and some jugs of water that had

been placed in the storeroom with the box of negatives were also missing. The camera was recovered under circumstances indicating that it had been stolen, but the record is silent as to the circumstances of the theft or the identity of the thief. The jugs of water were found the day after the loss was reported to the ship's officers. The box of negatives was not recovered until after the lapse of several months, when it was found in the forepeak of the vessel among some signal rockets. How it came to be there is a matter of conjecture. Whether it was stolen by the same person who took the camera, or whether it was taken by one of the defendant's employees under the belief that it contained brandy, as indicated by the marks on the box, does not appear. Conceding that the defendant is liable in conversion for the misfeasance of its servants, we must also admit that the evidence does not affirmatively disclose any such misfeasance. As we have seen, the theft or loss of the goods through the mere non-feasance of the carrier does not render him liable in conversion. The mere fact that the box was actually on board the defendant's ship is not necessarily inconsistent with the view that it may have been stolen or lost. If, for instance, the box had been stolen by one for whose acts the defendant was not responsible, it would be none the less a theft, because it had been secreted in some inaccessible part of the vessel instead of being hidden elsewhere. So, if by mistake the box had been taken by a passenger, who, after discovering that it did not belong to him, had placed it where it could not be found, there might be a case of negligence against the defendant when the facts would not support a charge of conversion. These suggestions sufficiently indicate the necessity, under the evidence herein, of a direct and explicit charge to the jury that the plaintiff could not recover in this action unless he had made proof of actual conversion.

Let us now see whether the charge as it stood prior to this request had fairly and sufficiently instructed the jury upon this point. The following quotation contains all that was said on that subject : " If the said box was discharged from the ship and

passed by the custom house inspectors, and thereupon left on the dock at pier 6, subject to Lieut. Massey's risk, and it was there-after taken on board at Lieut. Massey's request and at his risk, the defendant is entitled to your verdict. But if these matters did not occur, if the box did not come out of the ship until after it was finally discovered, after repeated search, it will be for you to say whether the conduct of the defendant or its servants, by which the box became mixed up with a lot of other boxes containing signals was, under all the circumstances disclosed, excusable or justifiable, so as not to make defendant liable for its failure to deliver on demand." It will be seen that this charge not only fails to cover the point made by the request, but it assumes that the defendant or its servants removed this box and mixed it with the signals, and upon that assumption the jury was left to say whether such conduct was "excusable or justifiable." We think it was error for the court to decline to charge the substance of the request above referred to.

This view of the case renders it unnecessary to discuss the other points made by the defendant. We may simply add that this is not a case in which the power of the court to disregard mere forms of pleading can be invoked in aid of the plaintiff. The complaint alleged conversion and the case was tried on that theory. While no particular form of complaint is now essential to a recovery under our Code practice (§ 481), and courts are authorized to disregard errors and defects in pleadings, or other proceedings which do not affect the substantial rights of the adverse party (§ 723), it is none the less true that the substantial differences which control and determine the rights of parties are still in force. (Pomeroy's Remedies and Remedial Rights, § 108; *Goulet* v. *Asseler*, 22 N. Y. 225; *Eldridge* v. *Adams*, 54 Barb. 417.) The case having been tried upon the theory of a conversion, the judgment in trover must be supported by the same proof that was necessary under the common law.

The judgment of the court below should be reversed and a new trial ordered, with costs to abide the event.

BARTLETT, J. (dissenting). I cannot agree that there was an utter failure of proof upon the subject of the removal of the lost box of negatives from the storeroom in which it had been originally deposited aboard this ship.

As pointed out in the prevailing opinion, the court was asked to charge the jury that "in such case the defendant can only be made liable in this action upon proof of actual conversion of the box of negatives." The learned trial judge said in response to this request: "I decline to charge otherwise than I have already charged."

In the main charge the court used this language: "But, if these matters did not occur, if the box in question did not come out of the ship until after it was finally discovered, after repeated search, it will be for you to say whether the conduct of the defendant or its servants, by which the box became mixed with a lot of other boxes containing signals, was, under all the circumstances disclosed, excusable or justifiable, so as not to make the defendant liable for its failure to deliver on demand. If it was, then the defendant is entitled to your verdict; but if it was neither, then the plaintiff is entitled to recover."

The conversion of this property of course could not be directly proved. It was to be inferred, if at all, from the surrounding circumstances, and I am of opinion that the learned trial judge properly submitted the question to the jury.

The evidence in this case, while possibly open to conflicting inferences, justified the conclusion that the defendant corporation, by the acts of its servants, was chargeable with the conversion of this box. The verdict of the jury is conclusive.

The learned counsel for the appellant in his brief here states that the plaintiff gave no evidence on the subject of conversion. Defendant's request to charge, already quoted, is to be considered in view of this position. It is now urged that the facts in this case might have warranted the finding by the jury of negligence and not conversion, citing *Magnin v. Dinsmore* (70 N. Y. 410, 417). The answer to this suggestion is that it is not raised by any exception to the judge's charge. The case was submitted to the jury on the sole ques-

tion whether the defendant had converted this box of nega-tives. The trial judge said to the jury, in substance, take all the facts in this case and say whether this defendant is charge-able with conversion. The distinction between conversion and negligence as now argued was presented neither to the trial judge nor to the jury. When the main charge is read, having this condition of the record in mind, it is clear that the case was properly submitted to the jury to determine the only question litigated or discussed at the trial.

I vote for an affirmance of the judgment.

PARKER, Ch. J., GRAY, MARTIN and CULLEN, JJ., concur with WERNER, J.; VANN, J., concurs with BARTLETT, J.

Judgment reversed, etc.