The judgment and order should, therefore, be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except HOUGHTON, J., who dissents.

---

(137 App. Div. 63.)

### WOOD v. LONG ISLAND R. CO. et al.

(Supreme Court, Appellate Division, Second Department. March 31, 1910.)

1. MASTER AND SERVANT (§ 330*)—INJURIES TO THIRD PERSONS—EVIDENCE—PRESUMPTIONS—RECITALS OF CONTRACT.

That a contract between a railroad company and independent contractors employed to excavate a right of way adjacent to a street provided that the contractors should not remove a fence along the street without notice to and approval of the railroad company's engineer raises no presumption that a subsequent taking down of the fence resulting in a personal injury was done by or with knowledge of the railroad company, or that the railroad company was chargeable with the consequences thereof.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1270; Dec. Dig. § 330.*]

2. MASTER AND SERVANT (§ 330*)—ACTION—SUFFICIENCY OF EVIDENCE.

In an action against a railroad company and independent contractors for injuries received from a wire fence which had been removed at a point where the railroad company's right of way was being excavated by the contractors, and which had been placed near the railroad track and caught by a passing train, evidence *held* not to show that the railroad company was in any way connected with the removal of the fence and the placing of it near the track, but that such acts were done wholly by the contractors' employés.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1272; Dec. Dig. § 330.*]

Appeal from Trial Term, Kings County.

Action by John Wood, an infant, by Margaret Wood, his guardian ad litem, against the Long Island Railroad Company and others. From a judgment for plaintiff and orders denying a new trial, defendants appeal. Reversed as to the mentioned defendant, and new trial granted. Affirmed as to the other defendants.

Argued before WOODWARD, JENKS, BURR, THOMAS, and RICH, JJ.

William C. Beecher, for appellant railroad company.

William L. Kiefer, for appellants Sheehan and Corkhill.

William Hepburn Russell, for respondent.

RICH, J. This judgment should be reversed as to the appellant the Long Island Railroad Company upon the ground that the plaintiff failed to prove that it was guilty of any negligence causing or contributing to his injury.

The defendant railroad company was authorized and required by chapter 499, Laws 1897, and chapter 297, Laws 1901, to change the grade of its road from the surface to a depth of 16 feet below the surface on portions of Flatbush and Atlantic avenues. In August,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

1902, it entered into a contract with its codefendants for the work, which provided that the latter should furnish all the labor and materials necessary, and complete the job in a workmanlike manner, assuming all risks and liabilities on account of injury or damage to persons or property.   Section D 28 provided:

"The contractor, at his own cost and expense, shall take down and remove any * * * existing fence which may come in the way of, and interfere with, the execution of the work under contract; and such removal shall be done under the supervision and directions of the engineer. * * * No * * * fence shall, however, be removed or disturbed by contractor without at least 24 hours' previous notice having been given to the engineer, and in no case will contractor be permitted to carry out any such work unless in the opinion of the engineer the progress of construction requires such removals."

The engineer mentioned was the engineer of the defendant railroad company.   The tracks in Atlantic avenue, near Howard street, were in close proximity to the sidewalk; and to protect pedestrians the company had, prior to commencing its contemplated improvement, constructed and maintained a fence on the curb—in some places inside the curb—composed of a top and bottom strand of corrugated ribbon wire, between which there was a strip of mesh wire, about two feet wide, supported at top and bottom by a heavy wire, the whole nailed to posts.   On the day of the accident employes of the contractors were working in the vicinity of Howard street, on Atlantic avenue, and had placed one of their tool boxes directly in front of the house occupied by the plaintiff's parents, inside the curb and near the railroad fence. A portion of this fence east of the tool box had been taken down at about 7 o'clock on the morning of that day, the wires and posts rolled up and placed alongside of the tool box, at a distance of three or four feet from the track.   The plaintiff, a boy about 7 years of age, with two of his playmates about his own age, climbed upon the box, and amused themselves by watching the men at work and the passing trains.   Some of the workmen in taking a large piece of timber through the gap in the fence became tangled in the wire, and dragged it upon or near the railroad track.   It is claimed that the wire was caught in some manner, a very few minutes after this, on a passing locomotive, was drawn tight, and the plaintiff's hand, resting thereon, was injured to such an extent as to require the amputation of three of his fingers.

The plaintiff's theory, upon which the case was tried and upon which he must stand or fall (Wamsley v. Atlas Steamship Co., 168 N. Y. 540, 61 N. E. 896, 85 Am. St. Rep. 699; Caponigri v. Altieri, 165 N. Y. 255, 59 N. E. 87; Wright v. Eckert, 115 App. Div. 580, 100 N. Y. Supp. 979; Tyng v. Corporation Trust Co., 104 App. Div. 486, 93 N. Y. Supp. 928), was that in moving the timber through the gap in the fence the wire being part of the standing fence in front of the tool box, tore the top wire of the standing portion upon which plaintiff's hands were resting loose, and in this manner inflicted the injury.   It was shown that many trains passed this point daily.   The portion of the fence removed was taken up at about 7 o'clock in the morning. The accident happened in the neighborhood of 3 o'clock in the afternoon.   There is no proof of any train coming in contact with the wire

until the workmen dragged it out just before the accident. The trial court charged the jury that if the accident happened through that particular negligence, namely, "that this was dragged out there by these workmen and left there, and a train came along in a minute and a half afterwards and caused this injury, * * * the Long Island Railroad Company is not responsible," the company was not liable for the negligence of the employés of its codefendants, but left it to the jury to say whether or not the taking down of the fence and placing it by the tool box in so close proximity to the track' was an act of reasonable care and prudence, and, if not, that it might be an additional negligent act which caused or resulted in the accident. This instruction, so far as the railroad company is concerned, necessarily rested upon the further finding that the act of taking down the fence, rolling it up, and placing it by the tool box was the act of the defendant, with the result of which it was legally chargeable; for, were it the negligent act of employés of the contractors, the court had charged it did not render the railroad company liable. The time intervening between the time when the fence was taken down and the accident was too short to charge the latter with knowledge of its removal. The only oral evidence in the case relating to the taking down of the fence was given by Marion Barr, a witness called by the plaintiff, who testified that she saw three men come to the fence, heard one of them order the others to take it down, and saw them do so. She thinks the person giving the order was one of the contractors. There is no other evidence upon this subject except the contract provision that an existing fence should not be removed or disturbed by the contractors without notice to, and the approval of, the engineer of the railroad company, and the record is devoid of any proof that the employés of the company participated in the work, or that its engineer knew of or sanctioned it. The engineer in charge of the work for the railroad company was called as a witness by the plaintiff, and testified that he did not give any instructions regarding the removal of the fence, and was not present when it was taken down. No presumption arises from the contract provisions sufficient to warrant the finding that the railroad company took down, or had knowledge of the taking down of the fence, or was chargeable with the consequences of such act. The only inference warranted by the evidence is that such work was done wholly by the employés of the contractors, and by their direction. There is no evidence establishing actionable negligence on the part of the railroad company, or connecting it in any manner with the accident, and for such failure of proof its motion for a dismissal of the complaint as to it should have been granted. The case was properly submitted to the jury as to the defendant contractors, and we cannot say that the verdict was against the weight of the evidence, as to those defendants.

The judgment and order must be reversed as to the defendant railroad company, and a new trial granted, costs to abide the event, and as to the defendants Sheehan and Corkhill the judgment and order should be affirmed, with costs. All concur.