OPINION OF THE COURT
Alexander, J.
In I.C.C. Metals v Municipal Warehouse Co. (50 NY2d 657), we held that in an action for conversion, where a warehouse fails to adequately explain its failure to return bailed goods, it *203 is not entitled to the benefit of its contractual limitation of liability. Thus, conversion is presumed and the bailor is entitled to recover the full value of the undelivered goods without proving a conversion by the bailee.
In this case, the Appellate Division concluded that this presumption of conversion also applies to common motor carriers who fail to deliver bailed goods upon demand. That court affirmed Supreme Court’s grant of summary judgment to plaintiff on its common-law negligence cause of action, but denied defendant’s motion for summary judgment on plaintiff’s cause of action for conversion and severed that cause. The case is before us by leave of the Appellate Division, upon the certified question: "Was the order of this court dated December 29,1989 properly made?” For reasons that follow we reverse the order below and answer the certified question in the negative.
I
In the spring of 1985, after having acquired a number of original Erte paintings from a gallery in England, Art Masters Associates, Ltd. and Kram Trading[1] consigned six of the paintings to Benjamin’s Art Gallery in Buffalo, New York, to be sold. When by July, the paintings had not been sold, Art Masters and Benjamin agreed that the paintings would be returned to Art Masters.
Benjamin thereafter delivered the paintings to defendant United Parcel Service (UPS) for delivery to Art Masters in Brooklyn, New York, and filled out a "pick-up” slip, which provided, in part, that "[u]nless a greater value is declared in writing on this receipt, the shipper hereby declares and agrees that the released value of each package * * * covered by this receipt is $100 which is a reasonable value under the circumstances surrounding the transportation.” Benjamin declared the value of the package to be $999.99 and paid $2.25 for the shipment based on a fee schedule of 25 cents for each $100 increment of value over the initial $100 in accordance with the provisions of the UPS tariff filed with and approved by the Interstate Commerce Commission (ICC) and the New York State Department of Transportation.
Although the paintings were scheduled to arrive on July 19, *204 1985, Art Masters never received them. On that day, the Art Masters’ employee left the premises for some 15 minutes and when she returned, she saw a UPS delivery truck in the next block. She asked the driver whether any delivery had been made to Art Masters and was told that a package had been left at the side door of the building. The package was not there and was never located. In response to a request that a trace be made, UPS produced a copy of a delivery sheet containing an illegible signature. The signature apparently did not belong to any Art Masters’ employee.
Art Masters declined UPS’ tender of $999.99, the declared value of the package, and commenced this suit seeking $27,000 as the full value of the six paintings. The company alleged two causes of action; the first sounding in negligence-based common-law liability of common carriers and the second in conversion. Among the affirmative defenses interposed by UPS was the limitation of liability based on the declared value of the package.
Motions for summary judgment by both parties ensued. Supreme Court granted summary judgment to Art Masters on that branch of its motion predicated on UPS’ common-law liability, inasmuch as UPS failed to demonstrate that the nondelivery did not result from its negligence. Damages were limited, however, to the $999.99 declared value.[2] The court granted summary judgment to UPS on the conversion cause of action, however, concluding that because UPS was a common carrier operating under the jurisdiction of the ICC, Federal law was applicable. Thus Art Masters’ failure to demonstrate that the loss was due to UPS’ willful or intentional conduct was fatal to its conversion cause of action.
In denying summary judgment to UPS on the conversion claim, the Appellate Division, concluding that Supreme Court erred in applying Federal law, held that State law applied and that under I.C.C. Metals v Municipal Warehouse Co. (50 NY2d 657, supra), "Art Masters established a prima facie case of conversion * * * based upon its undisputed allegations that Benjamin delivered the Erie paintings to UPS and that Art Masters never received them.” (153 AD2d 41, 48-49.)
UPS argues that the presumption of conversion applied to warehouses in I.C.C. Metals should not be extended to regu *205 lated motor carriers because to do so would conflict with the intent of the New York State Legislature that State law, as embodied in section 181 of the Transportation Law,[3] be consistent with the Federal law as embodied in the Carmack Amendment to the Interstate Commerce Act (49 USC §§ 10730, 11707).[4] UPS argues that because such a presumption of conversion is not applied under Federal law, it should not be applied as a matter of State law. Because no distinction between the applicable Federal and State statutes and their underlying purposes would support our not following the Federal scheme and for the reasons stated below, we agree with UPS.
II
A
Although common carriers are precluded from exempting themselves from all liability for loss or damage or injury to goods entrusted to them, both the Carmack Amendment (49 USC § 10730) and the New York Transportation Law (§ 181) permit regulated motor carriers to limit their liability for loss, *206 damage or injury to such property to the agreed-upon declared or released value of the property.
It has long been the Federal law governing interstate shipments of goods that stipulations between a shipper and a carrier limiting the carrier’s liability for the loss, damage or injury to goods entrusted to the carrier are enforceable as supported by sound principles of fair dealing and freedom of contracting (Adams Express Co. v Croninger, 226 US 491, 511) and cannot be avoided "by suing in trover and laying the failure to deliver as a conversion” (American Ry. Express Co. v Levee, 263 US 19, 21). The Supreme Court held in American Ry. Express Co. v Levee, that a local rule "applied as to the burden of proof narrowed the protection that the [carrier] had secured, and therefore contravened the law.” (Id.) As the Ninth Circuit Court of Appeals observed in Glickfeld v Howard Van Lines (213 F2d 723, 727) "the cases are uniform in holding that the conversion doctrine is pertinent only when there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain.” Federal courts routinely require that in the presentation of claims for damages for the nondelivery of goods, in order to avoid application of agreed-upon limitation of liability, a claimant must establish a true conversion — a defendant’s willful or intentional misconduct occasioning the nondelivery; where no such proof is forthcoming, the agreed-upon limitation of liability is enforced (see, Lerakoli, Inc. v Pan Am. World Airways, 783 F2d 33, 37-38, cert denied 479 US 827; Nippon Fire & Mar. Ins. Co. v Holmes Transp., 616 F Supp 610, 611-612; see also, Vogelsang v Delta Air Lines, 302 F2d 709, 712, cert denied 371 US 826).
B
This Court, likewise, has held that where there is an agreed-upon limitation of liability in a contract of carriage, the carrier may not be cast in damages, upon a theory of conversion, for the full value of the property it failed to deliver unless there is proof of actual conversion (see, Wamsley v Atlas S. S. Co., 168 NY 533).[5] In Wamsley, we observed that *207 "There are cases in which evidence of demand and refusal is sufficient to sustain a recovery in conversion, but this rule applies against common carriers only in exceptional cases. The general rule is that a common carrier is not liable in conversion for mere non-feasance, although he may be liable for negligence. So on the contrary he may be held in trover when he is guilty of misfeasance, although the wrong may have been unintentional.” (Id., at 536.) In Wamsley, we relied upon our prior holding in Magnin v Dinsmore (70 NY 417) that while proof of nondelivery, along with other evidence, may establish negligence, "[a] mere non-delivery will not constitute a conversion” (id., at 417; see also, Magnin v Dinsmore, 62 NY 35) and the plaintiff could not avoid the limitations of the contract of carriage by proof of nondelivery alone. Thus, it has long been the settled rule in this State that a carrier is entitled to the benefit of a contractual limitation upon its liability for nondelivery unless the shipper establishes that the nondelivery resulted from the carrier’s affirmative wrongdoing (D’Utassy v Barrett, 219 NY 420, 424; see also, Reichman v Compagnie Generate Transatlantique, 290 NY 344, 352, cert denied 320 US 771).
Art Masters argues, as does the dissent, that this rule has been changed by our holding in I.C.C. Metals (50 NY2d 657, supra) a case involving the failure of a warehouse to deliver, on demand, valuable goods stored with it for approximately two years. There, the warehouse was unable to offer more than speculation as to the reason the goods were missing. We held "that proof of delivery of the stored property to the warehouse and its failure to return that property upon proper demand suffices to establish a prima facie case of conversion” (id., at 660) and divests the warehouse of the benefit of the liability-limiting provisions of the storage agreement. The burden was placed upon the warehouse to come forward with evidence sufficient to prove that its failure to return the property did not result from its conversion of that property to its own use and thus overcome the presumption of conversion. We held that only if the warehouse proffered sufficient proof to satisfy the trier of fact of the truth of its explanations would the bailor be required to prove the warehouse at fault in order to recover.
Our decision in I.C.C. Metals however, gave no indication that we intended to apply the presumption of conversion to common motor carriers. Quite the contrary; our consideration was directed to the question of "whether a warehouse which *208 provides no adequate explanation for its failure to return stored property upon proper demand is entitled to the benefit of a contractual limitation upon its liability.” (Id., at 660 [emphasis supplied].)[6] Considering the issue now, we conclude that the presumption of conversion articulated in I.C.C. Metals should not be extended to common motor carriers. Common carriers of property by motor vehicle are highly regulated in New York under the provisions of article 8 of the Transportation Law (see, Transportation Law § 170 et seq.) as are common motor carriers engaged in interstate commerce (see, 49 USC § 10521 et seq.). The New York State Legislature has consistently expressed an intent that intrastate motor carriers in this State be regulated under statutory schemes consistent with the Federal regulatory scheme relating to motor carriers engaged in interstate commerce. In 1906, Congress enacted the Carmack Amendment permitting carriers to limit their liability to the declared or released value of goods so long as that declared value determined the shipping rates charged and an opportunity to declare a higher value was afforded (see, Act of June 29, 1906, ch 3591, 34 US Stat 584, 585). Shortly thereafter, in 1907, our Legislature enacted section 38 of the Public Service Commissions Law to essentially mirror the provisions of the Carmack Amendment (see, L 1907, ch 429).
Congress’ Motor Carrier Act of 1935 (49 US Stat 543) incorporated the Carmack Amendment. New York’s Legislature followed suit in 1938, enacting article 3-B of the Public Service Law (L 1938, ch 543, § 2) also incorporating the New York version of the Carmack Amendment now located at section 181 of the Transportation Law.[7] This 1938 legislation followed the recommendation of the Joint Legislative Committee on Motor Carriers and Transportation that: "intrastate motor carriers should be placed within the jurisdiction of a State regulatory body empowered to regulate intrastate operations along lines similar to the Federal Motor Carrier Act, so *209 as to secure complete coordination between Federal and State authorities in the regulation of motor transportation. State regulations and Federal regulation should go hand in hand. There should be cooperation between this State and the Federal Government so far as it is practicable” (Report of Joint Legis Comm on Motor Carriers and Transportation, 1936 NY Legis Doc No. 93, at 15 [emphasis supplied]).
Given the close similarity between the Federal and State statutes under consideration and the common purpose served by the two statutes, it is consistent with sound principles of statutory construction, that the statutes be construed harmoniously (see, All Seasons Resorts v Abrams, 68 NY2d 81, 87; Matter of Fink v Lefkowitz, 47 NY2d 567, 572, n). Moreover, construing the provisions of Transportation Law § 181 consistent with the construction of the Carmack Amendment by the Federal courts comports with the prior decisions of this Court limiting the liability of a common carrier to the declared or released value in respect to claims of conversion based solely on nondelivery of shipped goods (see, D’Utassy v Barrett, 219 NY 420, supra; Wamsley v Atlas S. S. Co., 168 NY 533, supra). Contrary to the assertions of the dissent, extension of the I.C.C. Metals rule to common carriers is not merely a matter of procedure; it would effectively change the substantive law of conversion as applied to motor carriers by allowing recovery without any affirmative proof of the carrier’s wrongdoing, and thus "narrow[ing] the protection * * * the [carrier] had secured” (see, American Ry. Express Co. v Levee, 263 US 19, 21, supra). Indeed, it will actually shape the outcome of a case because it grants the full relief sought — the actual value of a shipped parcel notwithstanding the parcel’s declared value— upon a mere allegation of nondelivery solely because of the carrier’s inability to explain the parcel’s whereabouts. Such a rule hardly comports with sound principles of fair dealing and freedom of contract and indeed would be "unjust and contrary to the policy of the law” (D’Utassy v Barrett, 219 NY 420, 425, supra).
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant’s motion for summary judgment dismissing plaintiffs’ second cause of action granted. The certified question should be answered in the negative

. Both Art Masters Associates and Kram Trading are plaintiffs and will be referred to collectively as Art Masters.

. Neither party contests the Appellate Division’s affirmance of that part of Supreme Court’s order, thus the only issue before us is the effect of the I.C.C. Metals presumption of liability in the conversion cause of action.

. Transportation Law § 181 provides, in part: "Every common carrier of property by motor vehicle shall, upon demand, issue either a receipt or a bill of lading for all property delivered to it for transportation. No contract, stipulation or clause in any receipt or bill of lading shall exempt any common carrier of property by motor vehicle from any liability for loss, damage or injury caused by it to property * * * provided, however, that when expressly authorized or required by order of the commissioner a carrier may establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared * * *. Every common carrier of property by motor vehicle shall be liable for all loss, damage or injury to property caused by delay in transit due to negligence while the same is being carried by it, but in any action to recover for damages sustained by delay in transit the burden of proof shall be upon the defendant to show that such delay was not due to negligence. Nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which such holder has under existing law” (emphasis supplied).

. 49 USC § 10730 provides, in part: "The Interstate Commerce Commission * * * may require or authorize a carrier * * * providing transportation or service * * * to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper, or by a written agreement, when that value would be reasonable under the circumstances surrounding the transportation.”

. The dissent’s reliance upon Bank of Oswego v Doyle (91 NY 32) — a case decided nearly 20 years before Wamsley — to support its contention that a contrary rule regarding carriers prevailed prior to I.C.C. Metals, is misplaced. Although the Oswego Court discusses carriers’ liability, it is clear that the defendant’s liability was predicated upon its capacity as a warehouseman (see, Bank of Oswego v Doyle, 91 NY, at 42).

. Although the dissent correctly indicates that the I.C.C. Metals Court spoke in terms of "all bailees” (dissenting opn, at 212), the question presented for decision pertained to warehouses only. It is axiomatic that "[principles are not established by what was said, but by what was decided * * * unless it relates directly to the question presented for decision” (People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Commrs., 174 NY 417, 447).

. Section 174 of the Transportation Law (L 1970, ch 267, § 3) embodied the recodification of section 63-v of the Public Service Law. In 1983, section 174 of the Transportation Law was recodified and is now section 181 (see, L 1983, ch 635, § 6).