JOHN W. HATHORN *v.* MARTHA ELY, adm'x &c. of Anson C. Ely, deceased.

Where a common carrier upon the canal received on board his boats a quantity. of flour, in barrels, agreeing to deliver the same, in good order, to the consignees, at New York, and to let it remain on board ninety days after its arrival in New York, without extra charge; and upon the flour arriving at New York the consignees.refused to receive it; *it was held,* that when the flour reached its destination, in good order, and a delivery was tendered to the consignees, their refusal to receive it put an end to the plaintiff's responsibility as *carrier,* and from that time he held it as the *bailee* of the owner, and was required to exercise ordinary care, only, in its protection; and was not liable for an injury to it which occurred without fault on his part.

APPEAL from the Supreme Court. The action was to recover freight for carrying flour and oats in canal boats, from Elmira to the city of New York, in the fall of 1853.

The plaintiff received the flour and oats (950 barrels of flour and 543 bushels of oats) on board of his two canal

boats, at Elmira, for which he executed and delivered to the original defendant, Anson C. Ely, two receipts, acknowledging the receipt of those articles, in good order, and promising to deliver them in like good order to Jones & Ferguson, New York, at the rate of sixty cents per barrel, freight, on flour, and ten cents per bushel on oats; and each receipt concluded as follows: "And I do agree to let the above flour remain on board ninety days after its arrival in New York, without extra charge."

The defense interposed was, that the plaintiff did not deliver the flour in good order, but that it was injured before delivery, through the plaintiff's negligence, to an amount exceeding the amount of freight.

The referee, before whom the cause was tried, found that the plaintiff transported the flour and oats to New York, where they arrived, safely and in good order, in the boats on board which they were shipped, on the 24th of November, 1853. That on the 28th of November the plaintiff informed the consignees, Jones & Ferguson, of the arrival of the boats, that the flour and oats were ready to be delivered, and where the boats lay; which was at pier No. 7 East river, a usual place for discharging such freight. The consignees were also requested to take off the flour. They replied that they had not heard from the defendant and had no authority to receive it, but were daily expecting to hear from him. This request was repeated on several days, and finally J. & F. were urged to receive the flour, or to make some arrangement in regard to it, as the harbor master refused to allow the boats to remain longer in the slip; to which they made the same answer as before. The flour could have been delivered in one day, if there had been any one to receive it. On the 1st of December the boats were pushed out of said pier by persons acting under direction of the harbor master, who alleged that they had remained as long without unloading as the rules of the harbor allowed. The plaintiff immediately went in pursuit of a steam tug, to tow the boats to a place

of safety, which he procured; but in the mean time one of the boats had been struck by another vessel and injured, so as to cause her to leak badly. She was towed to another dock, and the cargo removed and placed upon the dock with all reasonable dispatch, from which place it was taken by Jones & Ferguson at the defendant's request. The flour was wet and damaged by the leaking of the boat, in consequence of the collision, to the amount of $976.75. Such damage was not caused by any negligence, or by the want of due care and diligence on the part of the plaintiff. The defendant did not give any instructions as to the delivery of the flour, or whether he would elect to have it remain on the boats, until after the boats had been ordered out of the slip by the harbor master.

The referee found as matter of law, that the defendant was to have the privilege, if he desired it, of leaving the flour on board the boat, as a warehouse, for the space of ninety days, after her arrival in New York; that the plaintiff was not to wait for his freight, nor to remain subject to the stringent liability of a common carrier during that period; that the freight was earned, and the liability of the plaintiff as a common carrier was discharged, as soon as he had arrived in the port of New York, had reported his arrival to the consignees, and waited a reasonable time to deliver his cargo, or to receive the instructions of the defendant, whether he would or would not leave the flour on board. That as the consignees had declined for several days to receive the flour, the plaintiff became the mere depositary, or bailee of the same, for the defendant, and was so at the time when the damage was done, and as such bailee liable only for gross negligence. He rejected the defendant's claim for damages, and held that the plaintiff was entitled to recover the freight, and judgment was entered accordingly.

The defendant excepted to the report, and on appeal to the Supreme Court, at general term, the judgment was affirmed, and the defendant brought the present appeal.

Since the appeal the original defendant had died, and' the administratrix of his estate had been substituted as defendant, in his place, by order of this court.

*Robertson & Fassett,* for the appellant.

*John H. Reynolds,* for the respondent.

SELDEN, J. — If this case were to be decided by the rules which determine the ordinary duty of common carriers, when consignees refuse or neglect to receive goods, there could be no doubt that the plaintiff's responsibility *as a carrier* remained at the time when the flour was injured, and he would be held liable for such injury, though it happened without his fault. The refusal of consignees to receive goods, authorizes the carrier to relieve himself from the stringent liability which he is under as such, by depositing the goods in some suitable warehouse, if any such can be found, or by making some equivalent disposition of them, for the use of the owner. Occupying the position of carrier merely, his responsibility as such continues until this is done. (20 N. Y. Rep. 259.) But it would not be a reasonable construction of the contract upon which the plaintiff received the flour, to hold that he was to remain an insurer of its safety for ninety days after the duty of carrying it should be completed; in case the owner elected to have it remain that length of time upon the boats. Its fair interpretation is, that when the duty of carrying should terminate, an election by the owner to postpone the delivery for ninety days, would convert the carrier into a mere bailee. When, therefore, the flour reached its destination in good order, and a delivery was tendered to the consignees, their refusal to receive it put an end to the plaintiff's responsibility as carrier, and from that time he held it as the bailee of the owner. He had a right to treat the refusal of the consignees as equivalent to an election on the part of the owner to have the flour remain on the boats during the ninety days;

although he might, in the absence of an express election, have relieved himself from all responsibility, by placing it in store. Whether the plaintiff held the flour in pursuance of his contract, to allow it to "remain on board ninety days," or, as waiting the election of the defendant whether it should so remain, he was required to exercise ordinary care only, in its protection, and was not liable for an injury to it which occurred without fault on his part.

The judgment of the Supreme Court should be affirmed.

All the Judges concurring,

Judgment affirmed.