THE BANK OF OSWEGO, Appellant, *v.* WILLIAM H. DOYLE et al., Impleaded, etc., Respondents.

Warehousemen are liable for losses occasioned by innocent mistakes on their part in delivering goods to those not entitled to receive them.

Plaintiff and the firm of C. A. & Co., of which firm defendant C. A. was a member, entered into an agreement by which the former agreed to advance money to purchase a cargo of wheat at Toledo, Ohio, the same to be consigned to plaintiff at Oswego, and held by it as security for the advances. In pursuance of the agreement the wheat was purchased and shipped on board a schooner, of which defendants were joint owners. The bill of lading provided for the delivery of the wheat to plaintiff, and was indorsed over and delivered to it on payment by it for C. A. & Co. of a draft drawn upon and accepted by that firm. On arrival of the schooner at Oswego, C. A. reported it to plaintiff's cashier, who consented that the wheat might remain on board the vessel. Of this arrangement the defendants, other than C. A., had no knowledge. A portion of the cargo was sold and delivered on orders of plaintiff; the balance was removed and disposed of without its consent or knowledge by C. A. & Co. In an action to recover the value of the balance so taken, *held*, that defendants were liable ; that conceding their liability as common carriers had ceased, as to which *quære*, before the wheat in question was removed, they were liable as warehousemen.

(Argued November 24, 1882 ; decided January 16, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made October 28, 1881, which affirmed a judgment in favor of defendants, entered upon the report of a referee.

This action was brought to recover the value of a quantity of wheat alleged to have been delivered to defendants, as common carriers, for transportation, and which they refused to deliver to plaintiff, the consignee. The defendants were the owners of the schooner " Cheney Ames." At the same time

defendant Doyle with Cheney Ames, Warren C. Pratt and
Coman Ames were co-partners under the name of " Cheney
Ames &' Co." and as such were proprietors of a grain elevator
and warehouse known as the " Reciprocity Elevator," in
Oswego, and carried on business as millers, warehousemen and
commission merchants in said city. In November, 1875, Cheney
Ames & Co. procured the plaintiff to advance money for the
purpose of paying for a cargo of wheat to be purchased at
Toledo, less ten per cent of the purchase-price, which was to be
paid by Ames & Co. as a margin. The wheat was to be con-
signed to plaintiff at Oswego and held by it as security for the
sum advanced. In pursuance of the arrangement, about seven
thousand six hundred and eighty bushels of wheat were pur-
chased by parties in Toledo at the request of Ames & Co. and
delivered on board the said schooner on the 20th of November,
and plaintiff paid a draft drawn on Ames & Co., and accepted
by them for the purchase-price, less the ten per cent, which was
paid by that firm. The bill of lading provided that the wheat
was to be delivered to the plaintiff, and the bill was duly
indorsed and delivered to it. The schooner arrived at Oswego
with her cargo on the 26th of November, and her arrival was
immediately reported to the plaintiff's cashier, Lathrop, by
Cheney Ames. Lathrop asked what he should do with the
wheat, and was told by Ames that the schooner was not ready
to unload; that on account of her draught of water she could
not get up to the Reciprocity elevator and would require to be
lightened. Lathrop replied that if she was not unloaded soon ·
she must have a harbor insurance. The schooner was after-
ward lightened by taking from her about three thousand
bushels of the wheat, which were sold and accounted for to
plaintiff, and on the 30th day of November the schooner,
with the remainder of the wheat on board, was towed to the
wharf in front of the Reciprocity elevator and there moored.
Ames & Co. procured an insurance of the wheat on board for
one month, loss, if any, payable to whom it might concern,
and delivered the certificate thereof to the plaintiff, who
accepted and retained the same. The schooner was moored

where she lay at the instance of Ames & Co., and for their accommodation, to enable them to sell the wheat from it, subject to the plaintiff's lien and upon its orders. The referee found that the plaintiff assented that the wheat might remain in the vessel for that purpose. He declined to find that the plaintiff requested that it should so remain, and he found that there was no contract to that effect, and no agreement to pay the owners of the schooner for the storage of the wheat on board of her or for demurrage. In January and February, while the schooner was lying at said wharf, Ames & Co. sold about two thousand five hundred bushels of the wheat. These sales were reported to the plaintiff; the price of each parcel was paid or secured, and thereupon the plaintiff gave to Ames & Co. an order on the schooner for the delivery of the parcel sold. Prior to the 23d of March, 1876, at what time it did not appear, Ames & Co. took from the schooner and converted to their own use the remainder of the cargo, without the knowledge or consent of the plaintiff. The master did not report to the plaintiff the arrival of the schooner and did not offer to deliver her cargo. The referee found that after the arrival of the vessel at Oswego the master surrendered the entire control to Cheney Ames, and thereafter acted under his direction. The defendant Doyle resided at Youngstown, Niagara county, and was ignorant of the storage of the wheat in the vessel after its arrival in Oswego.

Further facts appear in the opinion.

*Albertus Perry* for appellant. A party discounting a draft and receiving therewith a bill of lading of the goods, against which the draft was drawn, deliverable to his order, acquires a special property in them, and has complete right to hold them as security for the acceptance and payment of the draft. (*Dows* v. *Nat. Exch. B'k,* 1 Otto, 618, 630, 632; *First Nat. B'k of Toledo* v. *Shaw,* 61 N. Y. 283.) By sending an account of purchase to Cheney Ames & Co., no title to or interest in the wheat was transferred to them.

(*Newcomb* v. *B. & C. R. R. Co.*, 115 Mass. 230.) As the bill of lading on its face showed that the title to the wheat was in the Second National Bank of Toledo, it would have passed no title to Cheney Ames & Co. (*Dows* v. *Perrin*, 16 N. Y. 325 ; *Dows* v. *Greene*, 24 id. 638, 640 ; *First Nat. B'k of Toledo* v. *Shaw*, 61 id. 283, 292.) By the contract of the master, contained in the bill of lading, he was bound to deliver the wheat to the plaintiff, unless prevented by the excepted perils, the "dangers of navigation, fire and collision." (Abbott on Shipping, 125 and note ; *Hewitt* v. *Buck*, 17 Me. 153 ; 1 Parsons on Maritime Law, 380, 382 and note.) The plaintiff was the consignee of the cargo. (*Davidson* v. *City B'k*, 57 N. Y. 81, 85.) As defendants did not deliver the wheat or tender a delivery thereof to the plaintiff, their liability as carriers continued. (*Gould* v. *Chapin*, 20 N. Y. 259 ; 1 Pars. on Ship. and Adm. 222, 224 ; 1 Pars. on Mar. Law, 152–154 ; *Hathorn* v. *Ely*, 28 N. Y. 78 ; *Segma* v. *Reed*, 3 La. Ann. 695 ; *Zinn* v. *N. J. St'mb't Co.*, 49 N. Y. 442, 445 ; *Smith* v. *N. & L. R. R. Co.*, 7 Foster, 86 ; *Price* v. *Powell*, 3 Comst. 322.) If the carrier desires to terminate his liability after arriving at the port of destination with the goods, he must act himself. To await the action of the consignee will not avail. (*Zinn* v. *N. J. St'mb't Co.*, 49 N. Y. 442, 456.) Even if the plaintiff had been in fault by neglecting or refusing to receive the wheat, the defendants, in order to relieve themselves of their liability as carriers, would have been bound to store the wheat in a suitable warehouse for the use of the plaintiff. (*Hawthorn* v. *Ely*, 28 N. Y. 78, 81 ; *Zinn* v. *N. J. St'mb't Co.*, 49 id. 442, 445 ; *Redmond* v. *Liverpool*, *N. Y. & Phila. S. Co.*, 46 id. 578, 583.) It rested with defendants to show that they have delivered, or that they were ready to deliver, all of the wheat which they received at Toledo, and expressly contracted to deliver to the plaintiff. (Story on Bailm., § 520.) If defendants' liability as carriers had terminated before the missing wheat was taken, they remained liable as bailees or warehousemen. (*Hathorn* v. *Ely*, 28 N. Y. 78 ; *Platt* v. *Hibbard*, 7 Cow. 497, 500, and note ; *Beardslee* v.

*Richardson*, 11 Wend. 25; *Coleman* v. *Livingston*, 4 J. & S. 32; affirmed, 56 N. Y. 658; *Schwerin* v. *McKie*, 5 Robt. 404; affirmed, 51 N. Y. 180; *Burnell* v. *N. Y. C. R. R. Co.*, 45 id. 184; Story on Bailm., § 450; *Willard* v. *Bridge*, 4 Barb. 361; *Collins* v. *Burns*, 63 N. Y. 1, 7.) The defendants are responsible for the negligence or misconduct of Cheney Ames. (1 Pars. on Mar. Law, 94.)

*W. H. Kenyon* for respondents. The referee and the General Term having found that the plaintiff waived notification by the master of the "Cheney Ames" of the arrival of the vessel and his readiness to discharge the cargo, the decision of the General Term upon this question of fact is final and cannot be reviewed in this court. (Code of Civil Procedure, §§ 1337, 1338; *Vermilyea* v. *Palmer*, 52 N. Y. 471–475, 476.) The action on the part of the plaintiff in taking possession and control of the grain on shipboard released the defendants from all obligations as common carriers. (*Farmer* v. *B. & S. L. R. R. Co.*, 44 N. Y. 505–511; *Tabor* v. *Taber*, 35 Barb. 305; *Ide* v. *Sadler*, 18 id. 32–34, 35.) Where goods are held on the vessel at the port of delivery by arrangement with the consignee, the common carrier is thereby released from liability as such. (*Putnam* v. *Furman*, 71 N. Y. 590; *Hathorn* v. *Ely*, 28 id. 78.) The respondents are not liable for the wheat as warehousemen. (*King* v. *Lennox*, 19 Johns. 235, 236; *Tuckerman* v. *Brown*, 17 Barb. 192; *Williams* v. *Nichols*, 13 Wend. 58; 1 Pars. on Shipping, 91, 93, 97 and note 2.)

MILLER, J. The plaintiff in this action claims to recover the value of a portion of a cargo of wheat which the defendants, as common carriers, transported from Toledo to the city of Oswego, and which it is claimed they never delivered to the plaintiff, who was the consignee of the wheat. There is no doubt as to the fact that the plaintiff never received a portion of the wheat, and the principal question presented upon this appeal relates to the liability of the defendants for its non-delivery. It appeared upon the trial, and by the finding of the referee,

that Cheney Ames, one of the defendants, was one of the owners of the vessel upon which the wheat was transported, and also a member of the firm of Cheney Ames & Co., who were proprietors of the elevator and warehouse at which the schooner was moored; and that prior to the 23d of March, 1876, said Cheney Ames & Co. had taken and removed from the schooner the balance of the · wheat remaining on board, and took and converted it to their own use, without the knowledge or consent of the plaintiff.   On the last-named day plaintiff's cashier went on board of the schooner and demanded the wheat of the master, who then and there informed him that there was no wheat on board to answer the demand, and that, therefore, he was unable to deliver it.

The referee, after various findings of fact, found as a conclusion of law that the plaintiff waived a formal notice and readiness to deliver by the master, by consenting to treat with Cheney Ames instead of the master in relation to the delivery of the said wheat under a bill of lading.   He also held that the vessel was ready or in a condition to be unloaded, after it was lightened and had reached the wharf where it was moored, as the plaintiff well knew by communication with the said Cheney Ames, and that by its consent to have the wheat remain longer on board, the plaintiff released the defendants, the Doyles, from their liability, under the bill of lading, as common carriers; that Ames, even if he had contracted to store the wheat in said vessel after its arrival, could not bind his co-owners by such contract without their consent or authority, and there being no proof of any agreement or consent by such co-owners that the wheat might remain on board the vessel after the arrival at the place of destination they are not liable to the plaintiff as warehousemen.   The opinion of the General Term holds that there was a waiver by the plaintiff of notice of readiness to unload and deliver the wheat, and the plaintiff having had notice from Ames of the arrival of the vessel, and its action being such as to imply its assent that the cargo might remain on the vessel, the liability of the defendants as carriers was terminated and the wheat remained on board the schooner

for the accommodation of Cheney Ames & Co., with the knowledge and assent of the plaintiff, and there being no agreement on the part of the defendants, or either of them, to store the wheat, and none on the part of the plaintiff to pay for storage or demurrage, the Doyles, not being parties to the understanding between the plaintiff and Ames, in pursuance of which the wheat remained on the vessel, are not liable for the loss.

By the contract contained in the bill of lading the master was bound to deliver the wheat to the plaintiff unless prevented by the dangers that were excepted, namely, dangers of navigation, fire and collision. He failed to deliver the wheat as required, and unless some lawful cause is shown his principal should be held liable to the plaintiff for the damage sustained by reason of non-delivery. A carrier in possession of goods intrusted to his charge remains liable as insurer until a delivery in fact, or until he has performed some act which indicates his purpose to terminate his relation as carrier. (*Goold* v. *Chapin*, 20 N. Y. 259.) If he does not deliver, or offer to deliver, which the law esteems equivalent to delivery, his contract is not fulfilled. (*Zinn* v. *New Jersey Steamboat Co.*, 49 N. Y. 442, 445; 10 Am. Rep. 402; Pars. on Ship. and Adm. 222, 224.) He may also relieve himself from liability by notifying the consignee of his readiness to deliver.

The appellant's counsel claims that the conclusion of the referee, that formal notice was waived, was not warranted by the evidence. There is testimony showing that Cheney Ames informed the cashier of the plaintiff that the vessel had arrived, and that the cashier inquired of him what he should do with the wheat, and Ames replied that the vessel would have to lighten to get up the river and was not ready to unload yet, and that the cashier then said, if she did not unload immediately she would require a harbor insurance, that he wanted to take care of the wheat, to which Ames replied, that she would have to lighten at one of the elevators below to come up to one of their elevators, and that the cashier told him to bring the warehouse receipts to him. The cashier received

the warehouse receipts for the grain, which was taken out in lighters, from Cheney Ames, and made no objection and gave no direction except requiring insurance. He also received a certificate of insurance running to December 30th following and he gave to Ames orders on the schooner for three parcels of grain sold, which were paid for to him. He also had knowledge of the arrival of the schooner. Cheney Ames testified that the cashier acquiesced in the wheat remaining on the vessel and it remained there at his request. There is no direct proof of an agreement to waive notice of a readiness to deliver, but it cannot perhaps be insisted that there was no evidence from which it might be inferred that there was such waiver, and that the referee was not justified in his finding in this respect.

But, even if there was a waiver of such notice, we do not think that that fact is to control the disposition of the case. The testimony of Cheney Ames shows that when the agreement was made for the advancement of the money to purchase the wheat it was understood that it could lay in the schooner and be paid for as it was taken out. This agreement was carried out in part by the payment for such portion of the wheat as was sold and disposed of at the time when delivery was made, and under the arrangement, as well as under the legal obligation which was assumed by the owners of the schooner that the wheat should not be disposed of without being paid for. This was an important element in the contract for the security of the advancement made by the plaintiff, and it is fair to assume, in view of the fact that the bill of lading was held by the plaintiff as a part of its security, that but for this the advancement would not have been made.

The referee has found, as a conclusion of fact, that the schooner, with the balance of the wheat, was moored at the instance and request of Cheney Ames & Co., for their accommodation, to enable them to sell and market the same subject to the lien of the plaintiff and its order, before it could be removed and delivered to the purchaser, and the plaintiff and Cheney Ames & Co. both understood and assented that the

wheat might remain in the vessel for that purpose, although there was no binding contract to allow it to remain for any length of time, or any. agreement to pay the owners of the schooner compensation for the storage of the wheat until it could be discharged ; but we are unable to discover any direct evidence which establishes an arrangement of this character between the plaintiff and Cheney Ames. The only testimony bearing on the subject is to the effect that Cheney Ames made the arrangement, and it does not appear that he acted directly for the firm of Cheney Ames & Co., and that he did not act for the owners of the schooner. In the absence of such direct proof, there is no ground for claiming that there was proof to sustain the finding of the referee in this respect. The most that can be claimed is that plaintiff acquiesced in the vessel remaining where she was moored, and this fact does not establish that the wheat remained on the vessel under the charge or direction of Cheney Ames & Co., or that they had control of it. It may also be remarked that the conclusion of the referee, that the vessel was ready or in a condition to unload after it was lightened and had reached the wharf, and the plaintiff knew it, is not material; and we think that the conclusion that the plaintiff released the defendants Doyles by its consent that the wheat should remain on board the schooner is not warranted and was erroneous.

Even if the wheat was ready or in a condition to be unloaded and the plaintiff knew it, it does not follow that the carrier was released from his duty and liability to moor the vessel at the wharf and to deliver or offer to deliver the cargo to the consignee. A tacit consent that the wheat should remain on board after the arrival of the vessel in port did not discharge the original undertaking, as it was proved. on the trial that the wheat was to be paid for when delivered. Such being the contract, defendants have no right to dispose of the wheat although they had offered to deliver the same to the plaintiff, even if the plaintiff was in fault by neglecting or refusing to receive it. The carrier to relieve himself from liability was authorized to deposit the wheat in some suitable warehouse, if

any could be found, or by making some equivalent disposition of it for the owner, and his responsibility as carrier continued until this was done. (*Hathorn* v. *Ely*, 28 N. Y. 78, 81.) Even if the defendants did at any time relieve themselves from liability as carriers, it is not shown that the missing wheat was not taken from the vessel before that time. The referee finds that at what time or times it was taken from the vessel does not appear in evidence. Cheney Ames swears that he does not know whether there was any wheat taken out before January 11, 1876, and for any thing that is proved the wheat may have been taken and converted on the very day the vessel was first moored at the wharf, when the liability of the defendants as common carriers was in full effect and they were bound to deliver to the plaintiff all the wheat received at Toledo, or to account for the same. The wheat had disappeared, how and when the defendants had it in their power to show; and, having failed to deliver all the wheat they received, every presumption is in favor of the plaintiff's right to recover for the missing wheat. Even if it can be held that in any way the defendants' liability as carriers was terminated before the missing wheat was taken, as they still retained the wheat in their possession, they remained liable as bailees or warehousemen, and as such were bound to deliver the wheat to the plaintiff on demand, and having failed to do this must be regarded as having converted it to their own use, unless they prove it was lost without any fault on their part. (*Hathorn* v. *Ely*, 28 N. Y. 78 ; *Platt* v. *Hibbard*, 7 Cow. 497; *Beardslee* v. *Richardson*, 11 Wend. 25.) The plaintiff had assumed to control the disposition of the wheat from the beginning, had never authorized the defendants to deliver it, except upon its specific order, and several lots were delivered in that way. This was the contract as we have seen, and the defendants were not discharged from it, even assuming that they were relieved from liability as common carriers. This was not the extent of their duty ; and as the plaintiff was entitled to the wheat it is not apparent why the defendants were not liable for the grain in their possession as owners of the schooner. It was their duty to keep the control of it, and they were liable for

negligence in allowing it to be taken and converted. If they consented that the property should remain on the vessel and were relieved thereby from their liability as carriers, the schooner became a warehouse, and they, being the owners, were liable either in one capacity or the other. The burden of proof was upon the defendants to establish that they were without fault after demand and refusal, and they were bound to show that they exercised ordinary care in keeping and preserving the wheat until called for. (*Schwerin* v. *McKie*, 5 Robt. 404; affirmed, 51 N. Y. 180; 10 Am. Rep. 581; *Burnell* v. *N. Y. C. R. R. Co.*, 45 N. Y. 184; 6 Am. Rep. 61.) Warehousemen are not only liable for losses occasioned by their negligence, but for those which arise from innocent mistakes in the delivery of goods to persons not entitled to receive them. Although it does not appear that there was any agreement on behalf of the owners of the vessel for the storage of the grain, the responsibility of the defendants as warehousemen arises from their failure to deliver the wheat to the plaintiff as they had contracted to do, and retaining it on board the vessel. This created a lawful obligation as warehousemen, and it was not necessary that the Doyles should consent that the wheat so remain in order to make them liable. The liability, therefore, does not rest upon the master of the vessel alone, nor are the defendants relieved by the finding of the referee that the vessel was left at Oswego in charge of Cheney Ames. The contract and consideration paid for the carriage and storage of the wheat was a single one; the contract for storing resulting from and being an incident to the main contract for the carriage of the same. (*Cary* v. *C. & T. R. R. Co.*, 29 Barb. 35, 45; 45 N. Y. 189.) The conclusion of the referee that the defendants Doyles were relieved from liability, we, therefore, think was erroneous. The claim of the respondents' counsel, that the plaintiff released the defendants from all duties and liability as common carriers by arranging with Cheney Ames & Co. that the wheat should remain on the vessel, cannot be upheld, and the discussion already had sufficiently disposes of this branch of the case. None of the authorities cited in this connection sustain the

position that under circumstances like these the owners of the vessel would be relieved from liability.

The other questions presented by the respondents' counsel have been considered and examined, and we are unable to find any ground upon which the judgment can be upheld, it should, therefore, be reversed and a new trial granted, costs to abide the event.

All concur, except RAPALLO, J., absent.

Judgment reversed.