Titone, J.
(dissenting). In refusing to apply the holding in I.C.C. Metals v Municipal Warehouse Co. (50 NY2d 657) to the present case involving a common carrier, the majority has, *210 without explanation, revived a line of cases that was expressly discarded as "essentially irreconcilable” in I.C.C. Metals (id., at 667) and, further, has ignored the sound policy considerations rooted in "practical necessity” on which the I.C.C. Metals decision was based. In the process, the majority has created a dual standard of proof for conversion actions against bailees — one for actions in which the bailee is a warehouse operator and another for cases in which the bailee is a common carrier. Since, as discussed below, the majority’s stated reasons for differentiating among bailees in this manner are unpersuasive, I offer my own dissenting views.
At the outset, I would stress that the issue here is not, as the majority opinion suggests, whether "a carrier is entitled to the benefit of a contractual limitation upon its liability for nondelivery” unless the carrier’s affirmative wrongdoing is established (majority opn, at 207, citing D’Utassy v Barrett, 219 NY 420, 424). As is true under the applicable decisional law at both the State and Federal levels, a carrier may generally limit its liability for lost packages to the packages’ declared value (see, 49 USC § 10730 [Carmack Amendment]; Transportation Law § 181), but such limitations do not apply when the carrier has been guilty of conversion (e.g., Bank of Oswego v Doyle, 91 NY 32; Glickfeld v Howard Van Lines, 213 F2d 723). This exception to the general rule, which is acknowledged by both parties, is based on the sound premise that no party should be able to insulate itself by contract from liability for its own intentional torts (see, e.g., Reichman v Compagnie Generale Transatlantique, 290 NY 344, 352, cert denied 320 US 721).
Accordingly, as even defendant concedes, a carrier may be held liable for the full value of undelivered goods, despite a lower "declared” value, if its responsibility for a conversion has been established under the prevailing rules of evidence. The problem in this case — a common one in cases involving failure to return bailed goods — is how the occurrence (or nonoccurrence) of a conversion is to be established. It is on this point that the Court’s prior decision in I.C.C. Metals is instructive and, in my view, controlling.
In I.C.C. Metals v Municipal Warehouse Co. (50 NY2d 657, supra), this Court held that in a conversion action based on a bailee-warehouse’s failure to redeliver goods to the bailor, the bailor may prevail by simply showing that the goods were delivered to the bailee and were thereafter not returned *211 unless the bailee sustains the burden of coming forward with an explanation of what happened to the goods. This rule, which was derived from principles traditionally applied in negligence actions against bailees (e.g., Stewart v Stone, 127 NY 500; Claflin v Meyer, 75 NY 260; see, PJI 4:93, at 1090; Richardson, Evidence § 109 [Prince 10th ed]), does not shift the burden of proof to the bailee. Rather, as the I.C.C. Metals Court observed (supra, at 666), it merely places the initial onus of explaining the circumstances surrounding the loss on the party in the best position to know. Once that initial burden of explanation is sustained, the bailor must persuade the trier of fact, by a preponderance of the evidence, that the bailee was at fault (id.).
Faced with the question of whether this ancient rule of evidence for negligence actions was also applicable to conversion actions, the I.C.C. Metals Court examined the prior decisions on the subject (id., at 666-667). It compared the cases on which the majority now relies (Reichman v Compagnie Generale Transatlantique, 290 NY 344, supra; Wamsley v Atlas S. S. Co., 168 NY 533; see also, Central School Dist. No. 3 v Insurance Co., 43 NY2d 878) with the cases not cited by the majority here, which held that a bailor establishes a prima facie case of conversion by simply proving delivery to the bailee and the bailee’s failure to return them upon demand (Proctor & Gamble Distrib. Co. v Lawrence Am. Field Warehousing Corp., 16 NY2d 344; Bank of Oswego v Doyle, 91 NY 32, 41, supra; Claflin v Meyer, 75 NY 260, 263, supra; see also, 1 Harper and James, Torts § 2.27). Finding the cases "essentially irreconcilable,” the I.C.C. Metals Court decided to "re-examine the matter” entirely in light of the underlying policy considerations rather than attempting to engage in a pointless dissection of the case law (50 NY2d, at 667, supra). The majority now concludes that the I.C.C. Metals decision is not controlling in, and should not be extended to, conversion cases involving common carriers, which are subject to Federal regulation. In my view, however, neither conclusion is sustainable.
Initially, the majority concludes that in imposing the burden of explanation on the warehouse operator in the case before it, the I.C.C. Metals Court did not intend to "change” the law as it relates to other classes of bailees, most notably common carriers. That conclusion, however, rests on a very weak reed: i.e., the I.C.C. Metals Court’s specific use of the terms "warehouse” and "stored property” in its opening de *212 scription of the issue before it (see, majority opn, at 207-208, 208, n 6, quoting 50 NY2d, at 660, supra). That no meaningful inference can be drawn from this stylistic happenstance is underscored by the fact that the I.C.C. Metals Court set forth its ultimate holding in significantly broader terms applicable to all bailees (50 NY2d, at 667, supra ["(w)e now conclude that there exists no sound reason to apply a different rule to (negligence and conversion actions) where, as here, the bailee comes forward with insufficient proof of its explanation for the loss of the bailed goods”] [emphasis supplied]). As the foregoing comparison reveals, there is little to be gained from a line-by-line textual analysis that focuses on the number of times — or the contexts in which — the I.C.C. Metals Court used terms that were descriptive of the specific parties before it rather than the applicable generic legal terms of "bailor” and "bailee”.
More meaningful than a linguistic analysis is one that looks to the case law and underlying principles with which the I.C.C. Metals Court was concerned. In this regard, the I.C.C. Metals Court’s undifferentiated references to cases involving warehouses and cases involving common carriers suggest that the limitation now identified by this majority was simply not contemplated by that Court (see, 50 NY2d, at 666-667, supra, citing Proctor & Gamble Distrib. Co. v Lawrence Am. Field Warehousing Corp., supra [warehouse]; Reichman v Compagnie Generale Transatlantique, supra [carrier]; Wamsley v Atlas S. S. Co., supra [carrier]; Bank of Oswego v Doyle, supra [carrier]; Claflin v Meyer, supra [warehouse]). Further, the policy considerations that the I.C.C. Metals Court deemed critical (see, at 215, infra) are equally applicable to most bailees, including carriers, regardless of the precise service they provide. Thus, in the absence of some highly persuasive circumstance justifying the superimposition of a new limitation, the I.C.C. Metals rule should be fully applicable in this situation.
The "persuasive circumstance” on which this majority relies is the existence of a Federal regulatory scheme which affects common carriers and provides a potential ground for differentiating carriers from warehouse operators. However, in my view, the existence of a Federal regulatory scheme is an insufficient ground to depart from the sound I.C.C. Metals evidentiary rule.
It is true, as the majority stresses, that our application of *213 the I.C.C. Metals burden of going forward to common carriers would render the rules governing intrastate conversion actions in New York somewhat different from those that govern in interstate disputes required to be settled under Federal law. It is also true that the State laws governing common carriers were intended to be applied in a manner consistent with the Federal regulatory scheme (see, Report of Joint Legis Comm on Motor Carriers and Transportation, 1936 NY Legis Doc No. 93, at 15 [hereinafter Joint Legis Rep]). Our State Legislature’s preference for uniformity, however, is not necessarily contravened by applying a local rule of evidence such as the I.C.C. Metals rule that differs from the Federal equivalent. First, as the majority observes, the Legislature intended only that the Motor Carrier Act, now codified at section 181 of the Transportation Law, be applied "along lines similar to,” rather than identical to, the Federal Motor Carrier Act to facilitate "cooperation between this State and the Federal Government so far as it is practicable” (Joint Legis Rep, at 15 [emphasis supplied]). New York’s present rule for contractual limitations of liability is already quite "similar” to the Federal rule, since both schemes permit carriers to limit their liability by agreement to the declared value of the goods and both schemes would withhold the benefits of such agreements from carriers who have been guilty of conversion (see, Bank of Oswego v Doyle, 91 NY 32, supra; Glickfeld v Howard Van Lines, 213 F2d 723, supra).[1] As the Court noted in I.C.C. Metals (supra, at 667), a rule placing the burden of explanation on the bailee does not increase the bailee’s duty of care, nor does it lead to the imposition of strict liability. Thus, application of the I.C.C. Metals rule would not lead to a divergence in the substantive Federal and State principles of tort law that are supposed to guide carriers’ behavior.
Second, even as cited by the majority, the legislative aim in *214 enacting a local version of the Federal Motor Carrier Act was to secure "coordination between Federal and State authorities in the regulation of motor transportation” (Joint Legis Rep, at 15 [emphasis supplied]). Manifestly, a divergence in the rules of evidence affecting the manner in which the courts resolve litigated disputes between carriers and their customers does not in any way impair this goal of coordination and cooperation among regulatory officials at each level of government. Thus, contrary to the majority’s suggestion, there is no clear legislative mandate requiring abrogation of the I.C.C. Metals rule in common carrier cases.
Nor are there any sound policy reasons supporting such a result. Contrary to the majority’s assertion, it is simply not accurate to state that a rule relieving carriers of any duty to explain "comports with the prior decisions of this Court” (majority opn, at 209, citing D’Utassy v Barrett, supra; Wamsley v Atlas S. S. Co., supra; see also, majority opn, at 206-207). At least one prior decision of this Court (Bank of Oswego v Doyle, 91 NY 32, supra) stated that a prima facie case of conversion against a carrier is established upon a showing that the goods were delivered to the carrier and not returned on the customer’s demand. Moreover, of the two cases on which the majority now relies, only one is on point (Wamsley v Atlas S. S. Co., 168 NY 533, supra). The other, D’Utassy v Barrett (219 NY 420, supra), merely held that a conversion action did not lie when it was known that the goods were stolen by the bailee’s employee, acting outside the scope of his employment, and the bailee himself was not culpable. The decision, which was based on a record in which the fate of the missing goods was stipulated, plainly has no bearing on the question presented here, i.e., how should the initial burden of demonstrating what happened to the goods be allocated. Finally, and most importantly, the majority’s assertion about the import of the prior cases completely overlooks I.C.C. Metals’ discussion of those cases, as well as its conclusion that the precedent was so hopelessly inconsistent as to be useless for purposes of analysis (50 NY2d, at 666-667, supra). Nothing in the present majority’s analysis suggests a reason why that rejected line of cases should suddenly be revived. Indeed, the majority’s attempt to suggest that Bank of Oswego v Doyle (supra) was superseded by Wamsley v Atlas S. S. Co. (supra; see, majority opn, at 206, n 5) is particularly ironic in light of I.C.C. Metals’ explicit rejection of the latter case as useful precedent.
Additionally, although the majority places great weight on *215 it (majority opn, at 209), the theoretical value of applying the State scheme regulating contractual limitations of liability[2] so that it is perfectly "harmonious” with the Federal system is unimpressive when compared to the strong public policies favoring application of the I.C.C. Metals rule to common carriers. A bailor generally loses all control over its property after delivering it into the hands of a carrier, and thus it is the carrier that "is in the best, if not the only, position” to discover and explain the circumstances surrounding the property’s disappearance or destruction (I.C.C. Metals v Municipal Warehouse Co., supra, at 665 [emphasis supplied]). A rule requiring the bailor to prove in the first instance that the property was lost through an act of conversion, rather than negligence or accident, would impose a "well nigh impossible burden” and would "encourage both dishonesty and carelessness” by enabling an unscrupulous carrier to obtain the benefits of a liability limitation clause through "the simple expedient of professing ignorance as to the fate of the goods.” (Id., at 665, 667.) In light of these self-evidently important concerns, which the majority here has inexplicably ignored, it seems clear beyond peradventure that our State’s public policy interest in imposing a minimal burden of explanation on the carrier, as previously recognized in I.C.C. Metals, more than outweighs our intangible interest in precise Federal-State uniformity and compels application of the I.C.C. Metals rule to this action arising under State law.
In sum, neither relevant considerations of public policy nor the existence of a different view among the Federal courts on the burden of proof problem supports the proposition that common carriers, unlike warehouse operators, should be exempt from having to explain the circumstances surrounding a loss or destruction of property entrusted to their care when challenged in an action alleging conversion. It is a legal commonplace that "if a fact lies peculiarly within the knowledge of a party, that party has the burden of proof with respect to it” (Richardson, Evidence §99, at 78 [Prince 10th *216 ed]). A fortiori, the same should be true of the lesser burden of simply explaining what happened to a package that the carrier was given by its customer. Indeed, common carriers have long been burdened with the duty of coming forward with an explanation when they are charged with negligence (Richardson, op. cit., § 109; see, e.g., Claflin v Meyer, 75 NY 260, supra). I see no reason why they should be relieved of that duty when the charge is the more serious one of conversion. Since the contrary rule endorsed by the majority, in effect, rewards those carriers that are least effective in managing their packages and keeping track of the goods entrusted to their care, it represents bad policy. Accordingly, I must, respectfully, dissent.
Chief Judge Wachtler and Judges Hancock, Jr., and Bellacosa concur with Judge Alexander; Judge Titone dissents and votes to affirm in a separate opinion in which Judge Simons concurs; Judge Kaye taking no part.
Order reversed, etc.

. The majority cites American Ry. Express Co. v Levee (263 US 19, 21) for the proposition that "a local rule 'applied as to the burden of proof narrow[s] the protection that the [carrier] had secured, and therefore contravene[s] the law.’ ” (Majority opn, at 206.) However, as is evident from the Supreme Court’s subsequent references to that case, the quoted language in American Ry. means nothing more than that State courts must apply the Federal evidentiary rules governing the burden of proof when adjudicating rights arising under Federal law (e.g., South Buffalo Ry. Co. v Ahern, 344 US 367, 372; Robins Dry Dock Co. v Dahl, 266 US 449, 457; Davis v Wechsler, 263 US 22, 25). The case has no bearing on the entirely separate question of when Federal rules governing the burden of proof should be incorporated in actions such as this based on local law.

. The majority refers to the problem presented here as one of "statutory construction” (majority opn, at 209). However, the principle that contractual liability limitations are inapplicable in conversion cases is, in fact, a judicially created exception to the general statutory rule authorizing such limitations. A fortiori, the question of what rules of evidence and proof should be applied is, at least in this State, a matter for common-law analysis rather than statutory construction. Accordingly, the "rules” of statutory construction relied on by the majority are, at best, of limited utility here.