FIREMAN'S FUND INSURANCE CO., as subrogee of Lewis B. Cullman and Dorothy Cullman, Plaintiff,

v.

WAGNER FUR, INC., United Parcel Service, Inc., 785 Park Avenue Owners, Inc., and Douglas, Elliman–Gibbons & Ives, Inc., Defendants.

No. 88 Civ. 5176 (MJL).

United States District Court,
S.D. New York.

April 15, 1991.

---

O'Donnell, Fox & Gartner by Kenneth A. Bloom, New York City, and Cozen & O'Connor by Daniel Q. Harrington, Philadelphia, Pa., for plaintiff.

Gwertzman, Pfeffer, Lefkowitz, Greenwald & Burman by Kenneth B. Raven, New York City, for defendant Wagner Fur, Inc.

Kenneth Adler & Associates by Alan Copertino, Melville, N.Y., for defendant United Parcel Service, Inc.

Cyperstein & Gerstner by Faye Feintuck, New York City, for defendants 785 Park Ave. Owners, Inc. and Douglas, Elliman–Gibbons & Ives, Inc.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court are motions by each of the defendants for summary judgment under Fed.R.Civ.P. 56. A Report and Recommendation was issued in this case by United States Magistrate James C. Francis IV on December 28, 1989, recommending that (1) motions for summary judgment filed by defendants Wagner Fur, Inc., ("Wagner") and United Parcel Service, Inc., ("UPS") be granted in part and denied in part, and that

(2) a motion for summary judgment filed by defendants 785 Park Avenue Owners, Inc., and Douglas, Elliman–Gibbons & Ives, Inc., (together, "Owners"[1]) be denied in its entirety.

Pursuant to Fed.R.Civ.P. 72, Wagner and UPS have filed objections to the portions of Magistrate Francis's Report and Recommendation ("Report") recommending partial denial of their motions. The plaintiff, Fireman's Fund Insurance Co. ("Fireman's Fund"), has filed objections to the portions of the Report recommending that the motions of Wagner and UPS be granted in part. Owners have indicated that they do not object to any portion of the Report.[2] For the reasons given below, the Magistrate's Report is accepted with modifications. Wagner's motion is denied in its entirety, UPS's motion is granted in part and denied in part, and Owners' motion is denied in its entirety.

## BACKGROUND

This case involves the disappearance of three furs from an apartment building at 785 Park Avenue in New York City, in November 1987.[3] In the spring of 1987, Lewis and Dorothy Cullman, who owned the furs, sent them for storage to a facility operated by Wagner. Wagner in turn sent the Cullmans a "storage receipt", which contained a description of the furs, an assignment of value to each, and the terms and conditions of Wagner's standard storage agreement. As was its usual practice, Wagner automatically assigned a value of $100 to each of the Cullmans' furs. The text of the storage agreement included a clause purporting to limit Wagner's liability for loss of or damage to the furs, even if caused by Wagner's negligence, to the assigned value on the receipt. The Cullmans were asked to sign and return the agreement, which they did.

In November, Wagner arranged to have the furs returned to the Cullmans via UPS. For reasons that are unclear, the furs were delivered from Wagner's facility by UPS not to 784 Park Avenue, where the Cullmans resided, but to Number 785.[4] There they were accepted by the porter and placed in a service elevator, from which they subsequently vanished. Following the disappearance of the furs, the Cullmans submitted a claim to Fireman's Fund, their insuror, for the loss. Fireman's Fund paid the claim and filed suit against Wagner, UPS, and Owners, asserting theories of negligence and conversion. Each of the named defendants then cross-claimed against the others under the same theories; each defendant now moves for summary judgment as to the claims and cross-claims asserted against it.

Magistrate Francis's Report recommends that summary judgment for Wagner and UPS be granted on the claims of conversion and denied on the claims of negligence. Report at 10–18. The Report further recommends that Owners' motion for summary judgment be denied in its entirety. Report at 18–21. As discussed below, we disagree with the Magistrate's conclusions as to the conversion claims against Wagner and UPS, and as to the enforceability of UPS's limitation of liability. We agree with his conclusions as to the negligence claim against Wagner and as to both claims against Owners.

---

1. As did Magistrate Francis, we treat as one entity for present purposes 785 Park Avenue Owners, Inc., and Douglas, Elliman–Gibbons & Ives, Inc., the owner and managing agent, respectively, of the building at 785 Park Avenue.

2. Owners have, however, asserted that if we grant summary judgment for Wagner and/or UPS on the basis of the contractual limitations of liability those defendants seek to enforce, those limitations should be extended to protect Owners. This argument is addressed in section C(1) below.

3. We accept the findings of fact contained in Magistrate Francis's Report, which we summarize here for purposes of clarity. UPS's objection to Magistrate's finding as to its policy regarding comparison of shipping labels to pickup records is discussed below.

4. The two most likely explanations appear to be that the furs were misaddressed by the Wagner employee who prepared them for shipping, or that the UPS driver misunderstood where the furs were to be delivered and the porter at 785 Park Avenue, who was relatively new on the job, failed to recognize that the delivery was not intended for tenants in his building.

## DISCUSSION

### A. Wagner's Motion for Summary Judgment

#### (1) *Negligence*

■ Wagner contends that it is entitled to summary judgment as to the negligence claims on the ground that the storage agreement between it and the Cullmans limits its liability to the $100 assigned value of each fur. Magistrate Francis found that, under New York law, Wagner could only rely on this limitation of liability if it gave the Cullmans an opportunity to obtain an increased valuation by paying increased storage rates. Report at 11–12.[5] He concluded that there was a genuine issue of material fact, precluding summary judgment, as to whether such an opportunity had been afforded, because while the language of the storage agreement would seem to permit a customer to obtain an increased assigned value,[6] there was evidence that Wagner's policy was to assign a value of $100 per article and to decline any requests for increases. Report at 12.[7]

Wagner objects that the parol evidence rule prevents our consideration of its valuation policy as contradicting the terms of the storage agreement. We disagree. The testimony as to Wagner's policy is not evidence of a "prior oral or written agreement or of [a] contemporaneous oral agreement" between Wagner and the Cullmans. Richardson on Evidence, § 601 (J. Prince 10th ed. 1973). Rather, it goes to the claim that the language of Wagner's storage agreement concerning increased valuations was a mere recital, which was insufficient to satisfy the extracontractual duty imposed upon Wagner by New York law.[8] *See I.C.C. Metals, Inc., supra* n. 5. Since we agree with Magistrate Francis's conclusion that the evidence raises a genuine issue of fact as to whether Wagner afforded the Cullmans an opportunity to obtain increased "coverage" against the loss of their furs, summary judgment for Wagner as to the negligence claim is denied.

#### (2) *Conversion*

On the claims of conversion against Wagner, Magistrate Francis found that the record revealed "no evidence that [Wagner] converted the furs for its own use," and thus that it was entitled to summary judgment. Report at 13. Plaintiff objects that Magistrate Francis improperly applied the law of conversion in considering whether the evidence showed any benefit to Wagner from the misdelivery of the furs. We agree.

The tort of conversion commonly refers to "the act of wrongfully converting (something) to one's own use." Garner, A Dictionary of Modern Legal Usage 153 (1987). More precisely, however, a conversion is any "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." ALI, Restatement (Second) of Torts,

---

5. Wagner does not dispute this reading of New York law. *See I.C.C. Metals, Inc. v. Municipal Warehouse Co.,* 50 N.Y.2d 657, 431 N.Y.S.2d 372, 376, 409 N.E.2d 849, 852 (1980) ("It has long been the law in this State that a warehouse ... may limit its liability for loss of or damage to stored goods even if the injury or loss is the result of the warehouse's negligence, so long as it provides the bailor with an opportunity to increase that potential liability by payment of a higher storage fee [citations omitted]").

6. The storage agreement stated, in part: "The value declared by the depositor as set opposite each article listed herein is agreed to be the value of such article for the purposes of this contract *and varying rates are offered by the furrier dependent upon such declared value* ...." Report at 2 n. 3 (emphasis added).

7. The Magistrate's Report at one point seems to conclude that "Wagner *neglected* to provide a meaningful opportunity to adjust the valuation rate assigned to each fur." Report at 10. However, we find (and perceive the Report, read as a whole, to have found) only that there is a genuine issue of fact as to whether the required opportunity was made available.

8. We also reject Wagner's assertion that the question of whether Mrs. Cullman would in any event have declined additional coverage (since she was self-insured) is relevant to the issue of whether Wagner provided the required *opportunity.* Nor do we find any support in New York law for the analogy Wagner attempts to make to waivers of subrogation in the landlord-tenant context.

§ 222A(1) (1964).[9]

■ The requisite interference with an owner's right of control will readily be found where bailed property is misdelivered. *Any* unauthorized delivery of bailed property by a bailee—even delivery to the wrong person resulting from the bailee's good faith mistake—constitutes a conversion. *Id.*, § 234 & Comment a.[10] Thus, in *Jacobson v. Richards & Hassen Enterprises, Inc.*, 172 F.2d 464, 466 (2d Cir.1949), the Second Circuit, applying New York law, held the operator of a coat-check in a hotel restaurant liable for conversion of a fur coat where the defendant's employee turned the coat over to an imposter posing as its owner. *See also Wabco Trade Co. v. S.S. Inger Skou*, 482 F.Supp. 444, 448 (S.D. N.Y.1979) ("The absence of benefit to [the defendant-bailee] does not preclude liability. An action for conversion may be based on transferring possession of the owner's property to one not authorized to receive it. In particular, a bailee who transfers goods in a manner inconsistent with an owner's instructions is liable for conversion to his bailor. [Citations omitted]"); *David Crystal, Inc. v. Cunard Steam-ship Co.*, 223 F.Supp. 273, 284–87 (S.D.N.Y.1963) (reviewing New York cases standing for the proposition that bailees are " 'not only liable for

losses occasioned by their negligence, but for those which arise from innocent mistakes in the delivery of goods to persons not entitled to receive them.' [*Bank of Oswego v. Doyle*, 91 N.Y. 32, 42 (1883) ]").

■ Under these principles, Wagner could be found liable for conversion if it misaddressed the furs, and thus caused them to be misdelivered and lost, even if, as it appears, this was merely a mistake and Wagner received no benefit from the misdelivery. In other words, plaintiff need not prove that Wagner converted the furs "for its own use" in order to succeed on this claim.[11] Accordingly, summary judgment for Wagner on the conversion claim is inappropriate.

### B. UPS's Motion for Summary Judgment

#### (1) *Negligence*

■ UPS moves for summary judgment on the grounds that its liability for the loss of the furs is also limited to $100 per package, the value stated on the UPS pick-up record prepared by Wagner prior to shipping the furs.[12] There is no dispute that Wagner, as agent for the Cullmans, was provided an opportunity to obtain increased valuation from UPS by paying a

---

9. "Intentional" has a particular meaning in this context: it applies only to the "exercise of dominion or control over the property which *in fact* seriously interferes with the right of another to control it. It is not an intention to interfere with the rights of another...." Restatement § 224, Comment c (emphasis added).

10. The common-law rule is well established that any one of the usual types of bailees who delivers the bailed chattel to the wrong person has converted the chattel and is liable to the bailor in an action of trover. [Citing Restatement.] Proof of negligence is not required, and proof of due care on the part of the bailee is no defense.
A.J. Casner & W.B. Leach, Cases and Text on Property 39–40 (3rd ed. 1984). *Accord,* Prosser and Keeton on the Law of Torts, § 15 at 96–97 (5th ed. 1984) ("[A] mere erroneous delivery to the wrong person[ ] will constitute a conversion. It is no answer that the defendant acted in good faith, in the honest belief that the delivery was lawful, proper, or authorized").

11. The cases cited in the Magistrate's Report do not contradict this conclusion. *I.C.C. Metals,*

*Inc. v. Municipal Warehouse Co., supra* note 5, involved the question of whether a bailor of goods to a warehouse, suing for conversion, must offer positive evidence of an act by the warehouse-bailee inconsistent with the bailor's property rights. The Court of Appeals held that the bailor need only show delivery of the goods to the warehouse-bailee and the bailee's failure to return them; a presumption of conversion then arises, and the burden shifts to the bailee to provide an adequately supported explanation for the loss of the goods. 431 N.Y.S.2d at 379, 409 N.E.2d at 856. In creating this evidentiary scheme, the Court gave no indication that it intended to alter the scope of the tort of conversion as it applies to misdelivery. Further, in the present case there is affirmative evidence of misdelivery, and thus plaintiff needs not rely on the presumption of conversion articulated in *I.C.C. Metals.*

12. We agree with Magistrate Francis's conclusion, to which the parties have not objected, that New York state law and not federal law governs the enforceability of UPS's limitation of liability. *See* Report at 14–15.

higher fee, permitting enforcement of UPS's limitation of liability under New York law. Nonetheless, Magistrate Francis found that summary judgment for UPS on this ground would be inappropriate because plaintiff has alleged that UPS was grossly negligent in misdelivering the furs. Report at 17–18. Magistrate Francis found the gross negligence claim supported by the evidence,[13] and concluded that, under New York law, such a claim would bar enforcement of the limitation of liability as a matter of public policy. *Id.* We disagree.

In *Calvin Klein Ltd. v. Trylon Trucking Corp.*, 892 F.2d 191, 195 (2d Cir.1989), decided in the same month in which Magistrate Francis issued his Report, the Second Circuit held that New York law would *not* deem gross negligence to bar such enforcement. Accordingly, UPS's motion for summary judgment limiting its liability on the claim and cross-claims of negligence to $300 is granted.

### (2) Conversion

■■■ Magistrate Francis found as to UPS, as he did as to Wagner, that it had overcome the presumption of conversion set forth in *I.C.C. Metals, supra,* since it "offered an adequate explanation for the disappearance of the Cullman package." Report at 16. However, as we have indicated, evidence of misdelivery, even if inadvertent, is sufficient to support a claim of conversion against a bailee. Since there is evidence in the record to support an inference that UPS's driver misread the label on the furs and thus caused the misdelivery, UPS may be liable for conversion.[14]

UPS cites the recent decision of the New York Court of Appeals in *Art Masters Associates, Ltd. v. United Parcel Service,* 77 N.Y.2d 200, 566 N.Y.S.2d 184, 187, 567 N.E.2d 226, 229–30 (1990), in which the Court declined to apply the *I.C.C. Metals* presumption of conversion to claims against common carriers. However, as noted above, there is affirmative evidence in the present case sufficient to support the claim that the bailee misdelivered the bailed property, eliminating the need for plaintiff to rely on the presumption of conversion. The distinction between these categories of conversion cases was explained in *Wamsley v. Atlas Steamship Co.,* 168 N.Y. 533, 536, 61 N.E. 896 (1901), a case on which the *Art Masters* court particularly relied:

> The general rule is that a common carrier is not liable in conversion for mere *non*-feasance, although he may be liable for negligence. So on the contrary he may be held in trover when he is guilty of *mis*feasance, although the wrong may have been unintentional [15] ... '... as when goods are by mistake, or under a forged order, delivered to the wrong person.'

(Citation omitted; emphasis added). Thus, like any other bailee, a common carrier is liable for conversion if it misdelivers property, even by innocent mistake. Prosser and Keeton, *supra,* § 15 at 97. The deci-

---

13. The evidence found to support the claim of gross negligence against UPS was that (1) the UPS pick-up record prepared by Wagner for the day the Cullmans furs were to be delivered (as distinct from the package label, of which there is no record) listed the correct address for delivery, and (2) the UPS driver apparently failed to determine whether the Cullmans actually lived in the building at 785 Park Avenue. Since we find that UPS's limitation of liability entitles it to summary judgment on the negligence claim, we do not reach its contention that this evidence would be insufficient as a matter of law to support a finding of gross negligence.

14. UPS objects to Magistrate Francis's finding that "it is UPS procedure for the delivery person to compare the address on the package against the address on the pick-up record prepared by

the client," and that "[o]nce the package is inside the truck the driver again compares the pick-up record to the address on the package at least twice before giving the package to the delivery person." Report at 5. In deciding that UPS may be found liable for conversion on the facts of this case, we need not rely on the Magistrate's finding that the facts as to this procedure are undisputed. Thus, we do not address UPS's objection.

Further, UPS's limitation of liability is not enforceable as to the conversion claims against it. *I.C.C. Metals, Inc. v. Municipal Warehouse Co., supra* n. 5, 431 N.Y.S.2d at 376, 409 N.E.2d at 853.

15. The Court here uses "intention" in a different sense than does the Restatement in defining conversion. *See* footnote 9, *supra.*

sion in *Art Masters* did not alter this basic rule. Like *I.C.C. Metals*, *Art Masters* was concerned with cases in which the evidence at most indicates *non-feasance* by the bailee. Since the evidence in the present case, on the other hand, suggests misdelivery by UPS, summary judgment for UPS on the claim of conversion is inappropriate.

### c. Owners' Motion for Summary Judgment

#### (1) *Negligence*

■ Owners do not object to Magistrate Francis's conclusion that, as a gratuitous bailee, they owed a duty of care to the Cullmans to refrain from gross negligence as to the furs. *E.g., Linares v. Edison Parking, Inc.*, 97 Misc.2d 831, 832, 414 N.Y.S.2d 661, 662 (Civ.Ct.N.Y.Cty.1979). We agree with the Magistrate that the evidence in the present case is sufficient to support a conclusion that Owners were grossly negligent in accepting the misdelivered furs and placing them in an inadequately secured service elevator.

■ Nor are Owners entitled to rely upon UPS's limitation of liability, as they contend. Neither owners' policy of accepting packages for their tenants nor the misdelivery of the furs created an agency relationship between UPS and Owners that would entitle the latter to benefit from such a limitation in this case. There is certainly no evidence of any agreement that Owners would act for UPS in completing delivery of packages, such as the one here, intended for *non-tenants* of 785 Park Avenue, as would be required to establish an agency. *See S.E.C. v. American Board of Trade, Inc.*, 654 F.Supp. 361, 366 (S.D.N.Y.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1118, 99 L.Ed.2d 278 (1988). Therefore, Owners' motion for summary judgment as to the negligence claims is denied.

#### (2) *Conversion*

■ Likewise, we agree with Magistrate Francis's conclusion that Owners are not entitled to summary judgment as to the conversion claims against them. Unlike our analysis of the claims as to Wagner and UPS, above, analysis of whether Own-ers may be held liable for conversion turns on an application of *I.C.C. Metals v. Municipal Warehouse Co., supra*. Since they were gratuitous bailees of the furs, and since they have failed to offer any adequately supported explanation for their loss, Owners have not overcome the presumption of conversion, and thus are not entitled to summary judgment. *See id.*, 431 N.Y.S.2d at 377 n. 3, 409 N.E.2d at 857 n. 3.

### CONCLUSION

Defendant Wagner's motion for summary judgment is denied as to all claims and cross-claims. UPS's motion for summary judgment limiting its liability on the claim and cross-claims of negligence to $300 is granted; UPS's motion as to the claim and cross-claims of conversion is denied. Owners' motion for summary judgment is denied as to all claims and cross-claims.

It is so Ordered.